LEMMON, Justice.
This is an appeal by Darren Haywood and Ernest McGee from convictions of first degree murder and second degree murder respectively and sentences to life imprisonment. The principal issue is whether the conviction should be reversed because the trial judge prevented Haywood’s attorney from cross-examining the prosecution’s chief witness on the basis of prior statements made by the witness to the attorney in a mid-trial interview in jail.[1]
The victim, a female attorney, was murdered in her office located on the second floor of her home on January 6, 1981. She was shot in the head with a .38 caliber bullet. Grey stains surrounding the point of entry indicated that the pistol had been placed in contact with the victim’s head when the fatal shot was fired.
Four people, including defendants Haywood and McGee, were eventually arrested for the murder. Anthony Holmes and the fourth suspect reached an agreement with the district attorney and entered a guilty plea to a reduced charge of manslaughter in exchange for their testimony against Haywood and McGee. At trial Holmes became the critical witness.[2]
*1319 According to Holmes’ testimony, he, McGee and the other suspect were talking on a street corner when Haywood drove up in his mother’s beige Plymouth station wagon and asked them to accompany him to his attorney’s office “to take care of some business”. As they were getting out of the station wagon when they reached the office, he noticed that Haywood and McGee were armed with .38 caliber pistols. Haywood instructed them to move to the door when the attorney responded to his knock and to push their way inside. Upon entering, McGee grabbed the victim and placed his pistol to her neck, taking a chain and medallion that she was wearing. Haywood grabbed the victim by the shoulder and took her upstairs, ordering her to take him to the place where she kept money. A few seconds later, Holmes heard two shots from the second floor, and the three who were downstairs ran out of the house and to the station wagon. McGee left with a fur-collared coat in addition to the medallion that he had taken from the victim. Haywood came out shortly thereafter and entered the station wagon, where he unloaded his pistol and threw away the shells. Upon being asked what had happened upstairs, Haywood responded that “the pistol had went off” and warned them not to mention the incident. When he asked Haywood several days later why he had shot the victim, Haywood replied that the victim was going to identify him.
When Haywood was arrested on February 12, 1981, the police seized a beige Plymouth station wagon registered in his mother’s name and found a spent .38 caliber casing inside the vehicle. Both the spent casing and the two bullets recovered inside the victim’s office were “Remington-Peters” brand. Additionally, one of the victim’s neighbors testified that she had seen three or four young black men enter a station wagon on the day of the murder and drive off hurriedly. She identified a picture of Haywood’s mother’s station wagon as the vehicle she had seen, particularly noting the dent on the back of the fender.
The victim’s husband testified that he had last seen Haywood at their office in connection with the settlement of Haywood’s civil case. Haywood was very dissatisfied and became “rather explosive” when the victim insisted on subtracting her fee from the settlement proceeds.
A prison inmate testified regarding jailhouse conversations with McGee and Haywood. He stated that Haywood told him “he had to shoot that bitch because he had to get revenge on her” and that McGee told him that he “told Haywood to make sure that bitch is dead [because] she had put one over on him on his lawsuit”.
Haywood’s sister’s common law husband testified that Haywood admitted several weeks after the incident that he had set out to rob the victim’s office and had been compelled to shoot her to keep her from identifying him.
The jury unanimously found Haywood guilty of first degree murder and McGee guilty of second degree murder. After the penalty phase of Haywood’s bifurcated trial, the jury recommended a life sentence. Hence these appeals.[3]
In their principal assignment of error, defendants contend that the trial court erred in ordering Haywood’s counsel not to impeach Holmes with statements given by Holmes during a jail visit by Haywood’s counsel. The issue essentially concerns an alleged violation of defendants’ right to confront a witness who testified against them.
*1320 There is no mention in the minutes or elsewhere in the record that such an order was ever issued. However, the record does contain a copy of a motion filed by the district attorney on October 5, 1981, the first day of trial, entitled “Motion to Order Counsel to Refrain from Using Statements of Witness”. The motion sought an order requiring defense counsel “to refrain from the use of any and all evidence, statements or admissions obtained by or derived from an interview conducted by [Name], attorney for Darren Haywood, on or about October 1, 1981 in the Orleans Parish Prison or House of Detention from one Anthony Holmes”. The motion stated that the interview with Holmes violated an October 1 order by the trial court prohibiting questioning of this witness after the witness’ counsel had informed the court that Holmes did not wish to speak to defense counsel.
The confrontation argument must be considered in the context of the entirety of Holmes’ trial testimony on October 6. In addition to the testimony outlined in the foregoing statement of facts, the direct examination of Holmes also brought out the fact that he had pleaded guilty to a reduced charge of manslaughter in this case and had previously been convicted of armed robbery. He asserted that he had pleaded guilty to manslaughter because he was charged with first degree murder and had not killed the victim.
On cross-examination by McGee’s counsel, Holmes asserted that he and McGee only intended “to cooperate in a little burglary” and did not specifically intend to kill the victim. McGee’s counsel also brought out the fact that the plea bargain had relieved Holmes of any exposure to the death penalty and had limited his sentencing exposure to twenty-one years.
Cross-examination by Haywood’s counsel covered Holmes’ lifelong friendship with Haywood and their drug usage together. When counsel focused on the plea bargain, Holmes admitted he would lie “if it meant saving his own neck”. Then, as counsel began to inquire into the details of the homicide, Holmes stated that Haywood and McGee “didn’t do nothing” and that he was “not going to send them up for the rest of their life, that’s my friend”. He then declared that he had killed the victim, whereupon counsel asked no further questions.
On redirect by the district attorney, Holmes asserted that he went to the victim’s house alone, having previously seen the victim while visiting a nearby school. However, he didn’t remember the configuration or appearance of the second story office, and he didn’t know where he had shot the victim (who had been killed by a gun held directly against her head). The court then called a recess to discuss with counsel the scope of impeachment of this witness whom the district attorney had originally called as a prosecution witness. During the recess, the court permitted Holmes to speak with his own attorney and with the district attorney.
After the recess, the district attorney questioned Holmes about Haywood's attorney’s visiting him in jail on an earlier date in the trial. Holmes affirmatively answered a question whether Haywood’s attorney told him he could not get more than twenty-one years even if he changed his story. At this point, McGee’s attorney objected to the leading question, adding that he didn't know if Haywood’s attorney would take the stand to testify. After the court overruled the objection, Haywood's attorney moved to sequester himself and to have substitute counsel appointed for Haywood. The court denied the motion. Holmes then admitted he had decided, because of the conversation with Haywood’s attorney, to “take the rap and only do 21”. He further admitted that he had not killed the victim and that his original statement to the police was the true version of the homicide.
The district attorney then moved for permission to play the tape of the original statement, noting that defense counsel had the right to cross-examine the witness. The court permitted the tape to be played as a prior consistent statement to rehabilitate the witness, but instructed the jury to consider the statement only for the purpose *1321 of determining the witness’ credibility and not as proof of the contents of the statement.
After the statement was played with Holmes out of the courtroom, the court brought the witness back into the court and allowed him to retell the details of the homicide without questioning by the district attorney. The court then tendered the witness to defense counsel for additional cross-examination. Defense counsel asked only if Holmes’ attorney had made him aware during the recess that he could be exposed to a greater sentence than he had bargained for, to which Holmes answered affirmatively.
Holmes’ attorney was then called to the stand. The attorney testified that Holmes had admitted that his taped statement was the truth. Additionally, the attorney’s own notes from the initial interview with his client provided a version of the occurrence which was consistent with the taped statement. Finally, the attorney testified that Haywood’s lawyer had asked permission to speak with Holmes and tell him “that his testimony could put Darren Haywood in the electric chair”. The attorney answered that it was not up to him, but that he would deny permission if the decision were his.
The principal interest secured by the right of an accused “to be confronted with the witness against him” is the right to cross-examine these witnesses. Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). This court is particularly sensitive about denial of confrontation rights. State v. Vaughn, 431 So.2d 358 (La.1982); State v. Toledano, 391 So.2d 817 (La.1980). The record in this case, however, does not establish that any confrontation rights were denied to defendant. The district attorney on redirect examination of Holmes brought out the jailhouse conversation between Holmes and Haywood’s attorney. Immediately thereafter, Holmes returned to his original version of the homicide and indicated that his recantation had been prompted by Haywood’s attorney’s representation that he could not get a sentence in excess of twenty-one years. When Holmes was tendered for recross-examination, the court imposed no restrictions or limitations on the cross-examining attorneys.
Perhaps Haywood’s counsel, at the time of his initial cross-examination of Holmes, felt constrained (by an order that does not appear in the record) not to question Holmes on their jailhouse conversation, but that issue became moot when Holmes immediately changed his testimony and cleared Haywood of any involvement. At that point, it was unnecessary to present any information obtained in the jailhouse conversation.
Once the district attorney brought up the subject of the jailhouse conversation and Holmes withdrew his recantation, Haywood’s counsel could not reasonably have felt constrained by any pre-trial order prohibiting disclosure of the matters disclosed in the jailhouse conversation. Indeed, counsel for both defendants were apparently satisfied, in the light of the existing confusion caused by Holmes’ several changes of position, to attack Holmes’ credibility by simply bringing out the fact that Holmes’ withdrawal of his recantation was prompted by the threatened loss of his favorable plea bargain. Neither defense attorney attempted further cross-examination, and we decline to speculate whether the judge would have curtailed further cross-examination on the subject of the jailhouse conversation that had been raised by the district attorney’s redirect examination or would have denied Haywood’s attorney the opportunity to testify on behalf of his client. We conclude that defendants have not established any denial of their confrontation rights.
The convictions and sentences are affirmed.

. The remaining assignments of error involve settled principles of law and are discussed in an unpublished appendix which forms part of the record in this case.

. The fourth suspect did not testify. At a hearing on defendants’ motion for a new trial, the fourth suspect denied that he had ever implicated Haywood or McGee, but claimed that he had stated from the outset that Holmes had committed the murder. The purpose of this testimony at the hearing on the motion was to show that the' prosecutor had not called him as a witness *1319 at trial because he had refused to identify Haywood and McGee as the murderers. However, his own attorney, as well as the two district attorneys handling the prosecution, testified that the suspect from the outset had implicated Haywood and McGee as the murderers, but had refused on the morning of trial to testify because he feared reprisal from Haywood’s and McGee’s relatives.

. At the time this appeal was granted, criminal appellate jurisdiction was vested in this court. On April 15, 1982, this court suspended the appeals and remanded the case to the district court for disposition of defendants’ motion for new trial. After an evidentiary hearing, the motion was eventually denied.