543 So.2d 975 (1989)
STATE of Louisiana, Plaintiff-Appellee,
v.
Kenneth E. LEONARD, Defendant-Appellant.
No. CR88-689.
Court of Appeal of Louisiana, Third Circuit.
April 19, 1989.
*977 J.M. Wooderson, Lafayette, for defendant-appellant.
J. Phil Haney, Asst. Dist. Atty. St. Martinville, for plaintiff-appellee.
Before DOMENGEAUX, LABORDE and KNOLL, JJ.
LABORDE, Judge.
Defendant, Kenneth E. Leonard, was indicted for second degree murder, a violation of La.R.S. 14:30.1. He pled not guilty and elected a jury trial, which resulted in a verdict of guilty. The trial court sentenced the defendant to life imprisonment at hard labor. Defendant appeals, assigning eleven errors by the trial court. We affirm.

FACTS
On June 3, 1987, defendant shot and killed Carl "Skippy" Mier at about 12:45 p.m. The two were introduced to each other that morning by a mutual friend, Stanley Keizer. Those three, along with defendant's wife and two children and Keizer's fiancee. Hazel Thibodeaux, spent much of the day at Keizer's camp in St. Martin Parish. Defendant, Keizer, and Mier drank beer throughout the day. Defendant was carrying a .44 double-action magnum revolver in a hip holster at the time.
The three, along with defendant's wife, sat at a table in the back yard of the camp drinking beer. Defendant and Mier apparently began arguing over which of the two had spent more time in prison. Defendant pulled the .44 magnum out of the holster and fired a shot into an old lawn mower. Mier stood up stating, "that was a fool thing to do." Defendant apparently responded by saying, "I'll show you a fool thing to do." Defendant then shot Mier in the chest at close range. Thibodeaux retrieved a towel and attempted to render assistance to Mier, but defendant allegedly threatened to kill her if she did. Mier was either already dead or died shortly afterwards. Keizer and defendant's wife then went to a nearby camp to call for help. Defendant told Thibodeaux to put some beer in a bag. He then apparently checked to see if his wife had called for help, discarded the gun and drove away in his pickup truck.
Soon afterwards, Curtis Jordan, Keizer's landlord, arrived at the scene. Defendant's wife ran to his truck crying hysterically and stated that her husband had killed someone in cold blood. Eleven minutes after they were called (apparently by defendant's wife), paramedics arrived at the scene by helicopter. Defendant's wife told one of the paramedics, James Greco, that her husband had shot someone.
Next, police officers arrived. They investigated the scene and began searching for defendant. Defendant's truck was spotted close by, near a wooded area. Trained search dogs were dispersed and soon cornered the defendant. He subsequently surrendered to the officers.
Defendant claims that the shooting was accidental as Mier stepped in front of a shot that was intended for a piece of red plastic. He assigns the following as errors by the trial court:
"1. The trial court erred in allowing Hazel Thibodeaux and Stan Keizer to testify in that they both lacked the mental capacity to be competent witnesses.
2. The trial court erred in allowing Jordan and Greco to testify to the out of court statement of the defendant's wife, as it was neither an excited utterance nor part of the res gestae.
3. The trial court erred in allowing Jordan and Greco to testify to the out of court statement of the defendant's wife without making a prior determination as to whether the statement was in fact an excited utterance.
4. The trial court erred in allowing the jury to view a freeze frame photo taken from a videotape of defendant's wife which had been previously properly excluded from evidence by the court.
5. The trial court erred in allowing the victim's clothing to be introduced, *978 as they had no probate [sic] value, were repetitive and merely served in inflaming the jury.
6. The trial court erred in allowing into evidence the bullet in question, as it was irrelevant, and the size of the bullet tended to inflame the jury.
7. The trial court erred in not allowing the defendant to introduce evidence as to the victim's prior criminal record.
8. The trial court erred in not allowing the defendant to introduce the Federal Firearm Certificate and in not allowing testimony by Stan Keizer as to said certificate.
9. The trial court erred in not allowing the defendant to recall Stan Keizer for further cross-examination after new evidence had been discovered.
10. The trial court erred in not allowing the defendant to question Stan Keizer concerning his prior statement that the incident was a "freak accident."
11. The trial court erred in denying a mistrial after it had been discovered that one of the witnesses had violated the sequestration order."
Defendant did not brief assignment of error number seven and thus we consider that assignment abandoned. State v. Dewey, 408 So.2d 1255 (La.1982).

ASSIGNMENT OF ERROR NO. 1
Defendant contends the trial court erred in allowing Hazel Thibodeaux and Stan Keizer to testify because they both lacked the mental capacity to be competent witnesses. The test for determining the competency of a witness to testify in a criminal matter is found in La.R.S. 15:461, which states in pertinent part:
"The competent witness in any criminal proceeding, in court or before a person having authority to receive evidence, shall be a person of proper understanding...."
Defendant contends Thibodeaux was not competent to testify because of low intelligence, as evidenced by her inability to recall where she was born. He also claims that Keizer should not have been allowed to testify because of prior mental problems stemming from the death of an older brother, which occurred when Keizer was nine years old. Keizer was admitted on several occasions to mental facilities and had taken prescribed medication for his condition. He receives social security checks to assist in paying for the medical treatment. Defendant basically argues that Keizer must still have a mental problem if he continues to receive these payments.
Although the trial court held an in camera examination of Thibodeaux and Keizer, its reasons for finding them competent to testify appear in the record. The court stated:
"First, with regard to Mr. Keizer, the Court finds that he has not undergone any medical treatment for mental problems for the last three years. That he has not been under any medication for the last three years. The witness testified clearly, he understood completely each and every question that the Court propounded to him, answered freely, gliblyas a matter of fact, and exhibited no hesitancy whatever. His command of the language is more than adequate and the Court found no evidence of any sort of bizarre behavior or anything else that would tend to affect his competence. We therefore have found him competent to testify.
With regard to Ms. Thibodeaux, although she was a special Ed. student beginning from the third grade, she's twenty-one years of age and is aware of that, has a fairly acute sense of time with regard to questions that the Court propounded to her as to when certain things happen. She understands fully and without any coaching the perjury laws and the effect of the oath. We found nothing that inhibited or in any way affected her from testifying properly. We therefore find her competent to testify."
A trial court's determination that a witness possesses proper understanding, and is, therefore, competent to testify is entitled *979 to great weight and will not be disturbed absent a showing of an abuse of discretion. State v. Humphrey, 412 So.2d 507, 516 (La.1981); State v. Wilkerson, 448 So.2d 1355, 1361 (La.App. 2d Cir.), writ denied, 450 So.2d 361 (La.1984). We hold that the trial court did not abuse its discretion in deciding that both witnesses were competent to testify.

ASSIGNMENTS OF ERROR NOS. 2 AND 3
Defendant contends that the trial court erred by permitting two witnesses to testify as to statements made to them by the defendant's wife shortly after the shooting. Defendant further contends the trial court erred by failing to make a determination of whether these statements were excited utterances before allowing the testimony to be elicited. The defendant briefed these assignments together, and, as they both address out-of-court statements, we will consider them together.
Attempts to serve Mrs. Leonard a subpoena to appear at trial were unsuccessful; consequently, the statements she made to others were introduced by those individuals. The first witness to testify as to an out-of-court statement made by the defendant's wife was Curtis Jordan. When he arrived at the scene. Mrs. Leonard ran toward his pickup truck, waving her hands, crying, and alerted him to stop. He testified that she was excited and told him that there was a dead man in the yard. Defendant's wife then said that her husband killed the man in "cold blood murder."
The second witness to testify as to an out-of-court statement of Mrs. Leonard was James Greco, one of the paramedics who arrived at the scene by helicopter. Greco testified that after the helicopter landed, a woman approached him and said there was a shooting. Concerned that the gunman was still at the scene, Greco asked if the person who shot the victim was still in the area. Mrs. Leonard said, "No, my husband did the shooting and he is not here right now."
Defendant objected to the introduction of this testimony. The trial court allowed the statements finding that they fell under either the res gestae or excited utterance exceptions to the hearsay rule. Defendant argues that these statements are hearsay, and that they are not admissible as excited utterances or as part of the res gestae.
Hearsay evidence consists of out-of-court statements, either verbal or written, which are offered at trial to prove the matter asserted. Its value depends on the credibility of an out-of-court declarant, who was not under oath and whose demeanor cannot be observed by the jury. State v. Molinario, 383 So.2d 345, 348 (La.1980), cert. denied, 449 U.S. 882, 101 S.Ct. 232, 66 L.Ed. 2d 106 (1980). Hearsay evidence is generally inadmissible except as provided by statute or by one of the recognized hearsay exceptions. State v. Nance, 469 So.2d 1045, 1050 (La.App. 2d Cir.1985). One statutory exception is res gestae. LSA-R.S. 15:447 provides:
"Res gestae are events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive and spontaneous words and acts of the participants, and not the words of the participants when narrating the events. What forms any part of the res gestae is always admissible in evidence."
LSA-R.S. 15:448 provides:
"To constitute res gestae the circumstances and declarations must be necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction."
The Supreme Court discussed the res gestae exception in State v. Kimble, 407 So.2d 693, 698 (La.1981), stating:
"In Louisiana, the res gestae doctrine is broad and includes not only spontaneous utterances and declarations made before or after the commission of the crime, but also testimony of witnesses and police officers pertaining to what they heard or observed before, during, or after the commission of the crime, if the continuous chain of events is evident under the circumstances."
*980 Mrs. Leonard made these statements about the commission of the crime within a short time after the shooting. The proximity of the shooting to the arrival of Jordan and Greco supports the trial court's ruling that Mrs. Leonard's statements were immediate concomitants of the crime and formed part of the chain of events surrounding its perpetration. As such, the statements are part of the res gestae and are admissible under the statutory exception to the hearsay rule. The trial court also found that the statements would fall under the excited utterance exception to the hearsay rule.
In State v. Henderson, 362 So.2d 1358 (La.1978), the Louisiana Supreme Court outlined two requirements in determining the admissibility of evidence under the excited utterance hearsay exception, and delineated several factors to assist the courts in determining whether the requirements are met. The court stated:
"There must be an occurrence or event sufficiently startling to render normal reflective thought processes of an observer inoperative. Additionally, the statement of the declarant must have been a spontaneous reaction to the occurrence or event and not the result of reflective thought. State v. Smith, supra [285 So.2d 240 (La.1973)]; see, C. McCormick, Evidence, § 297 at 704 (2d ed.1972).
Many factors enter into determining whether in fact the second requirement has been fulfilled and whether a declarant was at the time of an offered statement under the influence of an exciting event. Probably the most important of these is the time factor. In this connection the trial court must determine whether the interval between the event and the statement was long enough to permit a subsidence of emotional upset and a restoration of a reflective thought process. Several additional factors which may indicate that the statement was the result of reflective thought, but which do not automatically justify exclusion, are as follows: Evidence that the statement was self-serving or made in response to an inquiry; Expansion of the excited utterance beyond a description of the exciting event into past facts or the future; Proof that the declarant performed tasks requiring reflective thought processes between the event and the statement. See, State v. Smith, 285 So.2d 240 (La.1973); C. McCormick, Evidence, § 297 at 705, et seq. (2d ed.1972); G. Pugh, Louisiana Evidence Law, at 515 (1974), at 208 (Supp.1976); Comment, Excited Utterances and Present Sense Impressions as Exceptions to the Hearsay Rule in Louisiana, 29 La.L.Rev. 661 (1969)."
Id. at 1362.
In the present case, we find that the close range shooting of Carl Mier was a sufficiently startling event to render the normal reflective thought processes of an observer inoperative. Mrs. Leonard's statements were made within a short time of the shooting (apparently fifteen minutes at most), both statements recounted facts related only to the startling event and not beyond and there was no evidence that Mrs. Leonard had performed any task in the meantime requiring reflective thought processes. These facts support the trial court's conclusions that the statements are spontaneous reactions to the shooting and not a reflective narrative. Consequently, both requirements of Henderson are satisfied and these statements are admissible under the excited utterance exception.
Defendant also claims that these statements could not have fallen under this exception, as it was not proven that Mrs. Leonard was an eyewitness to the shooting. In State v. Bean, 337 So.2d 496, 497 (La.1976), it was held that a person must have personally witnessed the incident for this exception to be applicable. We are satisfied from our review of the circumstantial evidence contained in the record that Mrs. Leonard was an eyewitness to the shooting. The testimony clearly indicates that Mrs. Leonard was seated at the table with the three men when her husband shot Mier within feet of where she was seated.
We thus find these assignments of error to lack merit. The trial court was correct *981 in allowing these statements into evidence under both the res gestae and excited utterance exceptions to the hearsay rule.

ASSIGNMENTS OF ERROR NOS. 4, 5, AND 6
These assignments are considered together as they all concern the introduction of tangible evidence. The defendant argues that a videotape taken at the crime scene once police arrived was properly excluded from evidence, but that the introduction of a freeze frame photograph taken from this video was erroneously admitted. Defendant concludes that once the court excluded the video, any constructive reference to it was prejudicial. The photograph was of Mrs. Leonard which the state introduced when questioning Greco. Greco had never met the defendant's wife before this incident. Thus, he did not know the identity of the person who stated that her husband killed the victim. To assist Greco in identifying the declarant, the state showed him the freeze frame photo of Mrs. Leonard which was introduced at trial.
Defendant claims prejudice resulted from the jury being able to draw the inference that a videotape exists. We note that when the photo was introduced, the district attorney made no mention of the videotape. Also, the jury did not need to draw inferences because defense counsel spoke openly in court about the videotape and even questioned witnesses about it.
Even though this photo could not be considered gruesome, the standard for gruesome photographs is helpful here, as it balances the need for evidence, against the potential prejudicial impact of a photograph, to determine its admissibility. The admission of gruesome photographs is permitted unless it is clear that their prejudicial effect will outweigh their probative value. State v. Kirkpatrick, 443 So.2d 546, 554 (La.1983), cert. denied, 466 U.S. 993, 104 S.Ct. 2374, 80 L.Ed.2d 847 (1984). Photographs illustrating any fact, shedding light on any fact or issue, or relevant to describe the person, place, or thing depicted are admissible. Id. at 555.
Because Mrs. Leonard could not be located before trial, the photo was relevant to identify the defendant's wife who witnessed the murder and identified the murderer. No prejudice was specified by the defendant, and, in light of defense counsel's references to the videotape during the trial, we find no error by the trial court in admitting a photograph taken from it. Assignment number four has no merit.
Assignments numbers five and six address the introduction of the victim's clothing and an unspent bullet taken from the murder weapon. Defendant contends that this evidence had no probative value, but merely served to inflame the jury.
The prosecution contends that the victim's clothing was introduced to show the angle of the trajectory and to demonstrate that the shooting was not of an accidental nature. The bullet was introduced to show that the defendant's gun was loaded with live ammunition; to show that defendant had control over the firearm; and to show the type of ammunition used in killing the victim.
Here, the defendant suggests that the test of gruesome photo evidence should also be applied in reviewing the trial court's ruling. In State v. Bowman, 491 So.2d 1380, 1386 (La.App. 3d Cir.1986), writ denied, 498 So.2d 13 (1986), this court applied this standard to review the introduction of a blood-stained t-shirt. The court stated:
"Applying the standard applicable to the introduction of gruesome photographs, as the defendant submits should be done here, the trial court committed no error in allowing the introduction of the shirt. The test of admissibility of allegedly gruesome photographs is whether their probative value outweighs the possible prejudice that may result from their display to the jury. State v. Gaskin, 412 So.2d 1007 (La.1982)."
The Bowman court considered that evidence relevant and determined that undue prejudice to the defendant would not result from its introduction. We hold that in the present case, defendant has not shown that the prejudicial impact of these articles of *982 evidence outweighed their relevance and probative value. Therefore, assignments number five and six have no merit.

ASSIGNMENTS OF ERROR NOS. 8, 9, 10
These assignments are briefed together and will be considered together herein, as all address the impeachment of state witness, Stanley Keizer.
Defendant first asserts that he should have been allowed to introduce a Federal Firearm Certificate into evidence. This certificate identified Keizer as the owner of a firearm. At trial, defendant asked Keizer whether he owned a firearm at the time of the shooting. Keizer testified that he did not. The prosecution then objected, asserting that whether or not Keizer owned a gun was a collateral issue. The court sustained the objection. Later, the defendant recalled Keizer to the stand in an attempt to impeach his credibility by introducing the document showing that Keizer did, in fact, own a gun at the time of the shooting. The state again objected that this issue was collateral to the instant case. Defendant argued that the certificate was newly discovered evidence and that he should be able to present it in court. The court agreed with the state and ruled the matter was collateral and merely allowed a proffer of the cross-examination.
The defendant has an absolute right to cross-examine a witness upon the whole case. La.R.S. 15:280. Nevertheless, Louisiana statutory law specifically prohibits the impeachment of witnesses on collateral facts. "It is not competent to impeach a witness as to collateral facts or irrelevant matter." La.R.S. 15:494; State v. McAllister, 366 So.2d 1340, 1344 (La.1978).
Keizer's gun ownership on June 3, 1987, is a collateral fact and of no relevance, in that, it does not tend to prove or negate the commission of the offense, intent or any issue of material fact. Thus, there was no clear abuse of discretion in disallowing such evidence. Consequently, assignment of error number eight has no merit. Moreover, because the Federal Firearm Certificate would only have been used to impeach a witness on a collateral fact, the trial court's decision not to admit the certificate as newly discovered evidence also was not an abuse of discretion. Thus assignment of error number nine lacks merit.
Assignment number ten maintains that Keizer called the shooting a "freak accident" on the police videotape made when the authorities arrived at the crime scene. Apparently, in chambers, the trial court ruled that Keizer's out-of-court statement was inadmissible.
There is no mention of this meeting in the record, nor is there any objection in the record. Generally, the defense cannot avail itself of an error which was not objected to at the time of its occurrence. La.C.Cr.P. art. 841. In State v. Arvie, 505 So.2d 44 (La.1987) the court stated:
"One purpose of the contemporaneous objection rule is to require counsel to call an error to the judge's attention at a time when the judge may correct the error. The rule also prevents defense counsel from `sitting on' an error and gambling unsuccessfully on the verdict, and later resorting to appeal on an error which might have been corrected at trial."
Id. at 47. If an error is so fundamental that it calls into question the reliability of the fact-finding process, the contemporaneous objection rule has not been applied. See State v. Williamson, 389 So.2d 1328 (La.1980); State v. Green, 493 So.2d 588 (La.1986). In this case, the court's ruling does not call into question the reliability of the fact-finding process. This statement could call into question whether the defendant had the specific intent to kill or cause great bodily harm when the gun was fired. However, Keizer was available at trial and gave a full account of what he saw, as did the other witnesses. The jury considered all of this evidence together and determined that specific intent was proven.
Because no objection to the court's ruling was recorded, and because the error, if any, is not so fundamental that it calls into question the fact-finding process, assignment of error number ten lacks merit.

*983 ASSIGNMENT OF ERROR NO. 11
Finally, defendant contends that the trial court erred in denying a mistrial after it was discovered that one of the witnesses had violated the sequestration order. At the beginning of this trial, the court sequestered the witnesses on the defendant's motion. Near the conclusion of the trial, however, it was discovered that one of the State's witnesses, Curtis Jordan, had peered through a crack of the courtroom doors and watched parts of the testimony of at least two other witnesses. Mr. Jordan then returned to the witness room and told the others what he had done. Jordan said that he only saw the witnesses testifying. He did not say he heard their testimony. The defendant moved for a mistrial.
This court discussed the purpose of the rule of sequestration and the proper standard of review in cases where a violation occurs in State v. Wilson, 520 So.2d 935 (La.App. 3d Cir.1987). We stated:
"The purpose of the rule of sequestration is to prevent witnesses from discussing the facts of the case among themselves and from hearing prior testimony which may consciously or subconsciously affect their testimony and to strengthen the role of cross-examination in developing the facts. State v. Green, 470 So.2d 434 (La.App. 3d Cir.1985), writ denied, 475 So.2d 355 (La.1985); State v. Johnson, 438 So.2d 1091 (La.1983). It is within the trial judge's discretion to disqualify a witness if the rule of sequestration is violated. State v. Kimble, 407 So.2d 693 (La.1981). Unless there is a clear showing of abuse of discretion, the trial judge's ruling will not be disturbed. Id. Upon review, the court will examine the facts of the individual case to determine whether the violation resulted in prejudice to the defendant. State v. Ardoin, 340 So.2d 1362 (La.1976); State v. Anderson, 440 So.2d 205 (La.App. 3d Cir. 1983), writ denied, 444 So.2d 1241 (La. 1984). A violation of the rule of sequestration in and of itself, does not warrant a mistrial. The defendant must show the violation resulted in actual prejudice to the defendant. La.C.Cr.P. art. 921; State v. Tauzier, 397 So.2d 494 (La. 1981)."
Id. at 936, 937.
In the present case, the trial court denied defendant's motion for a mistrial. In denying the motion the court stated:
"... it hasn't been established to the Court's satisfaction that; number one, from what I heard from this witness, that Mr. Jordan did indeed violate the rule of sequestration. The extent of what he saw, the witness says that he said nothing about hearing anything, does not convince me of that. Any penalty for that, of course, would be imposed by the Court, first for contempt for the failure of that individual to carry out the order of the Court with regard to sequestration and secondly, there might be an additional penalty imposed that the State would not be able to call him back by reason of his having been tainted by having heard other evidence. But nevertheless, I am not convinced that the sequestration order has been violated and that could hardly be determined until we have Mr. Jordan present so that he can be called or if there is any other witness that you're aware of that may be knowledgeable as to what happened, I would hear them now. But since Mr. Jordan is not going to be called back and to the best of my knowledge his violation of the sequestration rule, if one took place, would have taken place after he had testified. I don't see how it would be pertinent or affect this case at all."
Upon reviewing the record, we do not find an abuse of discretion by the trial court. There was no showing by the defendant that the alleged violation of the sequestration resulted in any prejudice toward him. For these reasons, assignment of error number eleven lacks merit.
For the above reasons, we affirm the defendant's conviction and sentence.
AFFIRMED.