630 So.2d 1371 (1994)
STATE of Louisiana, Plaintiff-Appellee,
v.
Lanny Ray WALTERS, Defendant-Appellant.
No. 25587-KA.
Court of Appeal of Louisiana, Second Circuit.
January 19, 1994.
*1372 Davenport, Files & Kelly by Thomas W. Davenport, Jr., Monroe, for defendant-appellant.
Charles L. Cook, Asst. Dist. Atty., Monroe, for plaintiff-appellee.
Before NORRIS, LINDSAY and WILLIAMS, JJ.
NORRIS, Judge.
Lanny Ray Walters was indicted for second degree murder. La.R.S. 14:30.1. The jury, by a 10-2 vote, convicted him of manslaughter. La.R.S. 14:31. The trial court sentenced Walters to 21 years at hard labor with credit for time served. Walters appeals *1373 his sentence and conviction, urging four assignments of error. For the reasons expressed, we affirm the conviction but vacate the sentence and remand for resentencing.

Factual Background
At approximately 11:00 p.m. on August 15, 1991, the Walterses' oldest daughter, Kristi, left her home on Downs Road outside of West Monroe without her parents' permission or knowledge. She climbed out of her bedroom window to attend Derrick Dubose's interracial bachelor party in West Monroe. She rode to the party with Jackie Wafer, a young black man she had allegedly been dating, and some of his friends. After several hours at the party, Kristi, who is white, got a ride back home from Donnell Benton, accompanied by Derrick Dubose and Quante Augurson, all black males. Kristi told Benton, the driver, to stop the car about onequarter of a mile from her house, just beyond a curve and out of sight from the house. Dubose walked with Kristi through her backyard to her bedroom window to retrieve the gas money which she had promised to pay Benton. In the meantime, Benton had driven west, passed the house, turned around, and was waiting with the headlights and engine off in front of Kristi's driveway on Downs Road.
Kristi could not find any money and told Dubose to leave. The subsequent course of events was elicited from Augurson at trial. As Dubose walked down the driveway towards his friends, he encountered Kristi's father, wielding a 12 gauge Mossberg pump shotgun. According to Augurson, Walters stepped out from behind a shed (actually a school bus shelter built by Walters) located near the end of the driveway. He shouted for Dubose to stop, but Dubose ran to the car and jumped in the rear passenger side door. Walters then pointed the shotgun at Benton, who was sitting in the driver's seat, and ordered him to get out. Benton complied. Walters struck him in the face with the shotgun and then shot him once at close range in the head. The bullet entered his right ear and exited the upper back portion of his skull; Donnell Benton died instantly.
Walters ordered the other two boys to go inside and tell his wife to dial 911. The two began walking toward the house, but ran away before reaching it. Mrs. Walters placed three calls to 911 at 5:46, 5:52, and 6:02 a.m. Charlene Smith, a nurse's technician, saw Walters in the road on her way to work and stopped to help him. Officer Medaries arrived at approximately 6:30 a.m. He testified that Walters was sitting in the back of a police car drinking a cup of coffee and smoking a cigarette. Officer Medaries took Walters's recorded statement that morning around 7:40 a.m. at the courthouse.
Walters asserted 10 assignments of error. We will address only the following four briefed assignments: (1) admitting three hearsay statements over objection; (2) granting the state's motion in limine excluding Walters's recorded statement to Medaries; (3) allowing signatures, allegedly made by Kristi Walters, into evidence; and (4) imposing an excessive sentence.[1]

Assignment of Error No. 1
Walters contends the trial court erred in admitting three statements as non-hearsay under La.C.E. art. 801 D(4),[2] "things said or done" or the 803(2) "excited utterance" exception to hearsay. Initially, we note that Walters did not contemporaneously object to these statements at trial. However, because the evidence was admitted pursuant to the trial court's denial of Walters's written motion in limine, the issue is properly before this court. La.C.Cr.P. art. 841 B; State v. Parker, 421 So.2d 834, 840 (La.1982).
Walters incorrectly asserts that the trial court admitted all three statements under the above authorities. In fact, the record shows that two of the statements were actually admitted as non-hearsay under La.C.E. art. 801 D(2)(a) as Walters's own statements *1374 offered against him by a party opponent. Trial Court's Ruling on Motions in Limine, Vol. I pp. 134-35. Thus, we will address these two statements separately.

A. Walters's statements

Following Kristi's disappearance, Mrs. Walters placed phone calls to Kristi's friends, hoping to locate her daughter. She called Ellen Wafer, the grandmother of Jackie Wafer, Kristi's alleged boyfriend, at approximately 2:00 a.m. Ms. Wafer testified that she overheard a male voice in the background state, "When the son of a bitch brings her home everybody will know it. The whole world will know it." R.p. 443.
The other statement was made approximately one week before the shooting at the Walterses' home in the presence of Chrystal Bennett, Kristi's friend. Chrystal testified she heard Mr. Walters say, "If he saw him [Jackie Wafer] again that he was going to kill that nigger." R.p. 457.
The state contends these statements are not hearsay under La.C.E. art. 801 D(2)(a) if:
The statement is offered against a party and is his own statement, in either his individual or a representative capacity.
La.C.E. art. 801 A(1) defines "statement" as an oral or written assertion. The rationale is that a party should not be permitted to complain that he had no opportunity to cross-examine himself or that he is unworthy of credence save when speaking under sanction of an oath. See Comments to Article 801 D(2).
In State v. Sonnier, 558 So.2d 749 (La.App. 3d Cir.1990), the court upheld the introduction of alleged hearsay testimony offered against the defendant by the state regarding statements made by the defendant during a telephone conversation with the witness. Specifically, it held that the statements were not hearsay under La.C.E. art. 801 A(1) and 801 D(2)(a). In the instant case, the statements made by Walters were offered against him by the state. Both statements were relevant oral assertions tending to show that Mr. Walters had a motive to kill the black youth accompanying his daughter. These statements are non-hearsay under La. C.E. art. 801 D(2)(a) and were properly admitted into evidence. We find no error.

B. Mrs. Walters's statement to Chrystal Bennett

Following Kristi's disappearance, Mrs. Walters also called Chrystal Bennett at approximately 1:30 a.m. Chrystal testified that Mrs. Walters told her, "If you see Kristi, keep her at your house because her father is out in the bushes ready to kill." R.p. 458.
The trial court ruled this statement admissible as non-hearsay under La.C.E. art. 801 D(4), which provides a statement is not hearsay if:
The statements are events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive and spontaneous words and acts of the participants, and not the words of the participants when narrating the events, and which are necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction.
Appellant contends Mrs. Walters's statement was neither impulsive nor spontaneous, but rather made pursuant to planned and calculated efforts to locate her daughter. He further argues the 1:30 a.m. statement was too remote in time from either Kristi's disappearance at 11:30 p.m. or the shooting at 5:40 a.m. to form part of the immediate pressure of the occurrence. The state contends the statement was made spontaneously under the immediate pressure of the occurrence and formed a link in the continuous transaction culminating in the criminal act. According to the state, the "occurrence" was actually the inchoate offense of attempted murder committed when Mr. Walters lay in wait with a dangerous weapon. The state further argues that the statement falls under two La.C.E. art. 803 hearsay exceptions, "present sense impression" and "excited utterance."
Mrs. Walters exercised her marital privilege and did not testify. Regardless, her statements may be introduced through the person to whom they were made. State v. Leonard, 543 So.2d 975 (La.App. 3d Cir. 1989). The state also cites Leonard for its *1375 holding allowing the statements made by defendant's wife into evidence as res gestae or excited utterance. Leonard is distinguished in that the wife's statements there were made shortly after the homicide; Mrs. Walters made the statement before the homicide occurred. Nevertheless, the state correctly asserts that the res gestae doctrine in Louisiana is broad and includes not only spontaneous utterances and declarations made before and after the commission of the crime but also includes testimony of witnesses and police officers pertaining to what they heard or observed before, during, or after the commission of the crime if the continuous chain of events is evident under the circumstances. State v. Drew, 360 So.2d 500 (La.1978); State v. Molinario, 383 So.2d 345 (La.1980). Furthermore, the amount of time that elapses between the statement and the occurrence of the crime is not the sole consideration in determining whether a statement is part of the res gestae. State v. Billiot, 421 So.2d 864 (La.1982).
Mrs. Walters's statement to Chrystal Bennett at 1:30 a.m. was one link in the continuous chain of events culminating in Donnell's unfortunate death. Kristi disappeared at 11:30 p.m. Her mother soon noticed this and began searching by calling her friends to determine Kristi's whereabouts. Around 1:30 a.m. Mrs. Walters observed her husband, Mr. Walters, lying in wait outside of their house with a shotgun, ready to kill someone. She phoned Chrystal Bennett, who told her Kristi was with Jackie Wafer. Because of the potentially violent situation at hand, Mrs. Walters warned Chrystal to keep Kristi at her house if she saw her. Around 2:00 a.m., Mrs. Walters phoned Ellen Wafer. At this time, Mr. Walters allegedly made the statement that the whole world would know when Jackie Wafer brought Kristi home. Around 5:40 a.m., Mr. Walters appeared from behind the shed in his driveway with that same shotgun and shot Donnell Benton to death.
In State v. Green, 448 So.2d 782 (La. App. 2d Cir.1984), we held that defendant's statements made during negotiations with an undercover officer the evening prior to the drug sale formed part of one continuous transaction and constituted part of the res gestae. We find in the instant case that Mrs. Walters's statement was made spontaneously in response to the events unfolding before her, namely seeing her husband lying in wait with a dangerous weapon, apparently determined to shoot someone. We find no error in the trial court's decision to allow this evidence as part of the res gestae. Having reached this conclusion, we find it unnecessary to address the state's remaining arguments regarding "present sense impression" and "excited utterance," although these theories also appear to have merit.

Assignment of Error No. 2
By this assignment, Walters contends the trial court erred in granting the state's motion in limine excluding from evidence Walters's recorded statement to Officer Medaries. Walters argues the emotional statement, replete with transcribed notations of "inaudible" and "crying and sobbing," was necessary to rebut the state's portrayal of him at trial as a racially motivated, cold-hearted, premeditated murderer.
The controversy stems from Officer Medaries's answer at trial to counsel's question, "Where was [Mr. Walters] when you saw him?" He replied, "He was seated on the rear seat of one of the marked sheriff's office units, smoking a cigarette and drinking a cup of coffee." R.p. 336. In addition, when asked to describe his demeanor, Officer Medaries stated, "He appeared to be somewhat apprehensive, but that's all." R.p. 337.
The state argues that defendant's own statement which he offered in his own favor constituted hearsay under La.C.E. art. 801 D(2)(a). We agree. In State v. Freeman, 521 So.2d 783 (La.App. 2d Cir.1988), writ denied, 538 So.2d 586 (1989), we stated:
Generally, any out-of-court statement of the accused constitutes hearsay unless subject to an exception. Such a statement is admissible as an exception to the hearsay rule when it is an admission against interest. Thus, the defendant may not introduce his own self-serving exculpatory statements because they are hearsay. (citations omitted) *1376 Even though the defendant attempts to characterize the statement, with its "crying" and "inaudible" notations, as proving only his emotional state, the statement in its entirety is clearly exculpatory. Throughout the statement, Walters maintains his innocence, asserting he had been robbed in the past and feared for his property and claiming the killing was purely unintentional, even suggesting that Benton somehow hit the trigger and the gun fired. Walters's emotional outbursts are not distinct from the statement itself and cannot be severed to prove only the defendant's state of mind. The trial court did not err in excluding Mr. Walters's own self-serving exculpatory statement.
Furthermore, Walters was not prejudiced as his apparent grief was adduced through two other witnesses. Charlene Smith testified that Mr. Walters was visibly upset and crying when she observed him. R.p. 433. Officer Medaries, on cross examination, testified that Mr. Walters became very emotional during his statement, crying and sobbing periodically. R.p. 349. We find no reversible error.

Assignment of Error No. 3
By this assignment, defendant contends the trial court erred in admitting signatures, allegedly Kristi's, into evidence over his objection. On cross examination, the prosecutor asked Kristi about a letter she allegedly wrote (and signed) to Jackie Wafer, in which she referred to him as "sweet daddy" and said she loved him. R.p. 528. Kristi denied it was her signature on the letter. The prosecutor had Kristi sign her name on a blank piece of paper and again asked if it was her signature on the letter. Once again, she answered, "No." Before the prosecutor attempted to offer the letter into evidence, he read aloud the following excerpt:
This morning when I walked off, I wasn't mad or anything. There's this certain person who keeps staring at me and if he happens to say something to his dad I'll be in deep shit, because his dad will tell my dad and I'll be up the creek without a paddle. R.p. 529.
Upon defense counsel's objection, the trial court instructed him to cease reading it. Then, over defense counsel's objection, the court allowed a xerox of signatures on various letters (not their contents) and Kristi's in-court signature into evidence.
Walters contends first that the signatures are irrelevant. La.C.E. art 401 provides:
"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.
All relevant evidence is generally admissible. La.C.E. art. 402. Furthermore, a trial judge has considerable discretion in determining the relevancy of evidence; the ruling will not be disturbed absent an abuse of discretion. State v. Miles, 402 So.2d 644 (La.1981).
The state argues the signatures were relevant to impeach Kristi once she denied her signature on the letter; if she would deny a signature that was arguably hers, the rest of her testimony might be equally unworthy of belief. A witness's credibility may be attacked by extrinsic evidence,
including prior inconsistent statements and evidence contradicting the witness' testimony, unless the court determines that the probative value of the evidence is substantially outweighed by the risks of undue consumption of time, confusion of the issues, or unfair prejudice." La.C.E. art. 607 D(2).
The signatures were properly admitted into evidence for the jury to compare and then decide on Kristi's credibility.
Next, though not assigned as error, Walters argues in brief that the trial court erred in permitting the state to read a portion of the letter not admitted into evidence. Defense counsel objected as soon as the prosecution began reading the letter. The trial court immediately instructed him to stop reading from it. Walters contends the court did not attempt to correct the reading of the letter by a precautionary instruction to the jury, but there is no evidence in the record that defense counsel requested one. La.C.E. art. 105. Furthermore, he does not claim to have suffered any prejudice and in any event, we find none. The contents of the letter *1377 were never admitted into evidence. Additionally, the minute portion of the letter read to the jury was unclear, insignificant, and inconsequential as to defendant's guilt. Thus, we find no reversible error.

Assignment of Error No. 4
By this assignment, Walters contends the trial court erred in imposing an excessive sentence of 21 years at hard labor, the maximum penalty for manslaughter under La.R.S. 14:31 B, in effect at the time.[3] He argues that the trial court improperly deviated from the recommended sentence under the Felony Sentencing Guidelines.
The purpose of these Guidelines is to recommend a uniform sanctioning policy which is consistent, proportional, and fair. La.S.G. § 101 A. The designated sentence range provided in the Sentencing Guidelines Grid is appropriate for a typical case; that is, an offense committed without aggravating or mitigating circumstances. La.S.G. § 209 A 1. The Guidelines are advisory to the sentencing judge. No sentence shall be declared unlawful, inadequate, or excessive solely due to the failure of the judge to impose a sentence in conformity with the designated sentence range provided by the Guidelines. La.S.G. § 103 J. However, the Guidelines are mandatory in that they must be considered. A deviation is permissible only if the sentencing court specifies for the record the specific aggravating or mitigating circumstances which justify the departure. State v. Smith, 629 So.2d 333 (La.1993).
In the instant case, the court noted the Guidelines recommend a term of incarceration of a minimum 60 months (five years) and a maximum 90 months (seven and a half years). Although the court did not articulate the particular grid cell into which this case fell, it obviously falls within grid cell 1 G, considering the crime of conviction (manslaughter) and the defendant's clean prior record. The sentencing court discussed what it considered mitigating and aggravating factors and deviated significantly upward from the 90 month maximum recommended sentence. In mitigation, the court noted the defendant had no prior criminal record, is a high school graduate, received an honorable discharge from the United States Navy, has maintained steady employment and was highly commended by fellow workers, and is married with children. As aggravating factors, the court noted his age, 43, the violent manner in which the crime was committed, the victim's unfortunate death, and the use of a dangerous weapon.
La.S.G. § 209 B enumerates 18 specific factors constituting aggravating circumstances. However, only one factor relied on by the trial court, use of a dangerous weapon in the commission of the offense, is listed in § 209 B. Though a factor, this may not constitute a valid aggravating circumstance in the instant case because the use of a dangerous weapon is typical in murder and manslaughter cases. The final catch-all provision, § 209 B 19, allows the sentencing court to consider "any other relevant aggravating circumstances which distinguish the case from the typical case of the offense of conviction."
The trial court erred in finding Walters's age, the violent nature of the crime, and the victim's death as aggravating factors. These are not atypical factors in a manslaughter case; every homicide results in death and virtually all are violent. Furthermore, we are not persuaded that the use of a dangerous weapon, a listed factor but typical to this kind of case, justifies a gross upward deviation to the maximum statutory sentence, effectively tripling the Guidelines' recommended sentence.
We recognize, nevertheless, that the instant case may not be a typical manslaughter case and could justify an upward departure from the Guidelines. We might be convinced that the maximum sentence is appropriate if sufficient, valid aggravating factors are specified for the record by the sentencing court. However, the instant 21-year hard labor sentence is not adequately supported by articulated, valid, aggravating circumstances and *1378 cannot be affirmed. Furthermore, we note that the sentencing judge's reasons are ambiguous as to whether he considered the jury verdict to be a "compromise" and not an adequate description of the defendant's conduct, thus perhaps justifying the application of § 209 B 19, or whether he considered the verdict a typical manslaughter.[4] Finally, if the sentencing judge was attempting to follow State v. Brown, 616 So.2d 792 (La.App. 2d Cir.1993), by properly considering the Guidelines and then simply pronouncing a sentence not in conformity therewith, we point out that such a procedure is not permitted under State v. Smith, supra.
The task for the reviewing court is to give direction to the trial court concerning the proper sentence to impose; sentencing is performed by trial judges and generally not by appellate courts. State v. Smith, supra. We therefore vacate the sentence and remand the case to the trial court for resentencing.

Errors Patent
La.C.Cr.P. art. 930.8 C provides that at the time of sentencing, the trial court shall inform the defendant of the prescriptive period for post conviction relief. The record shows that the trial court did not inform Mr. Walters; however, this defect does not constitute grounds for reversal. State v. Hughes, 587 So.2d 31 (La.App. 2d Cir.), writ denied, 590 So.2d 1197 (1991). We direct the district court upon resentencing to comply with La.C.Cr.P. art. 930.8 C. We have reviewed the remainder of the record and find no other errors patent.

Decree
For the foregoing reasons, we affirm the judgment of the trial court with respect to the defendant's conviction. We vacate that portion of the verdict imposing a sentence of 21 years at hard labor and remand the case for resentencing in accord with this opinion.
CONVICTION AFFIRMED, SENTENCE VACATED AND CASE REMANDED FOR RESENTENCING.
NOTES
[1] Walters's remaining assignments of error not briefed are considered abandoned. U.R.C.A. Rule 2-12.4; State v. Dewey, 408 So.2d 1255 (La.1982).
[2] Former res gestae statutes, La.R.S. 15:447 and 15:448 were repealed effective January 1, 1989 with the enactment of the new Louisiana Code of Evidence. The concept of "res gestae" has been codified in La.C.E. art 801(D)(4).
[3] The offense now bears a maximum sentence of 40 years at hard labor. La.Acts 1992, No. 306 (eff. Aug. 21, 1992).
[4] The sentencing judge stated at one point that he rejected the accidental killing theory proposed by Walters, and that the offense was committed in total disregard of the victim. However, he later stated that he found justification for the jury's responsive verdict in that the defendant intended only to confront the victim, not murder him, but after the confrontation there was some "spontaneous reaction"this suggests intentional misdemeanor manslaughter, R.S. 14:31 A(2)(a). The typed jury charge in the record does not mention intentional misdemeanor manslaughter (the actual charge, as delivered by the judge, was not transcribed). Thus we are not certain exactly what the sentencing judge meant.