710 So.2d 1187 (1998)
STATE of Louisiana
v.
Phillip SMITH.
No. 97-KA-1075.
Court of Appeal of Louisiana, Fifth Circuit.
April 15, 1998.
Rehearing Denied May 15, 1998.
*1188 Bertha M. Hillman, Louisiana Appellate Project, Hillman Law Firm, Thibodaux, for Defendant/Appellant Phillip Smith.
Paul D. Connick, Terry M. Boudreaux, Ellen S. Fantaci, Hans Sinha, District Attorney's Office, Gretna, for Plaintiff/Appellee State of Louisiana.
Before GAUDIN, BOWES and DALEY, JJ.
BOWES, Judge.
The defendant, Phillip Smith, was convicted of second degree murder and was sentenced to life imprisonment at hard labor. The defendant appeals. We affirm the conviction and sentence.

FACTS
The state called various witnesses to testify as to the following facts. The defendant and Leonard Joseph, Michael Gordon, Jr. and Terry Havies were all juveniles, and were all members of a gang called the "Rolling 90's." The defendant was the leader of the gang. Neither the victim, Nathaniel McCall, nor Harry Williams, a principle witness, were members of the gang. McCall and Williams were also juveniles when McCall was murdered.
A few months prior to August 31, 1995, the defendant sold the victim a pager. According to Michael Gordon, Jr., the defendant was upset with the victim because the victim still owed the defendant money for the pager.
At approximately 8:00 p.m. on August 31, 1995, Harry Williams was walking on Keithway Street in Woodmere subdivision with the defendant and four other juveniles: Havies, Havies' younger brother, Gordon, and Joseph. Williams heard the defendant, Phillip Smith, state that he was going to "pop a dude." However, he did not know of whom the defendant was speaking.
At approximately 10:00 p.m., the victim approached the group of juveniles. The victim was walking towards them from the opposite end of Keithway Street. Eventually, the defendant, Smith, and the victim, Nathaniel McCall, whose nickname was "Budda," walked past each other. At the same time, Harry Williams was standing approximately 15 feet ahead of the defendant and the victim, and Michael Gordon and Leonard Joseph were standing on a nearby street corner. The group of boys grew silent as the defendant and the victim walked past each other. As soon as the victim walked past the defendant, the defendant turned and shot the victim once in the back of the head with a gun that he pulled from beneath his shirt. At trial Harry Williams, Leonard Joseph and Michael Gordon each testified that Philip Williams shot the victim.
Deputy McFarlain was the first officer to arrive at the scene. He saw the victim lying on the ground in a pool of blood and he testified that the victim was still breathing at that point in time. Joseph was performing CPR on the victim. It appeared to the deputy that the victim had been rolled over after sustaining the gunshot wound to his head, as the victim's feet were crossed at the ankles. The victim was immediately transported to West Jefferson Hospital, where he died from the gunshot wound.
Thereafter, the police canvassed the area in an effort to locate possible witnesses and suspects. They spoke with Williams, Joseph, and Gordon, who later provided the police with statements. Joseph and Gordon initially identified Williams as the perpetrator. Although Williams, Joseph and Gordon initially provided false statements regarding the perpetrator's description and/or identity, after speaking with their respective parents, they all recanted their earlier statements, and told the police that Phillips was the *1189 person that shot the victim. At the trial, the three juveniles also testified that the defendant was the person who shot the victim. They also testified that the reason that they had initially lied was because they all belonged to the Rolling 90's gang.

ANALYSIS
In this appeal, the defendant alleges that:
1. The trial court erred in not permitting appellant to crossexamine the state's witness concerning his juvenile record; and
2. The court committed reversible error when it allowed the state to present hearsay testimony.

LIMIT ON CROSS-EXAMINATION
The defendant's first complaint on appeal is that the trial judge erred when she ruled that the defense could not introduce Leonard Joseph's juvenile criminal record into evidence and, therefore, that the defense could not cross-examine Leonard Joseph regarding his juvenile criminal record.
Generally, evidence of juvenile delinquency adjudications is not admissible in a criminal case. La. C.E. art. 609.1(F). However, there are times when the confidentiality of juvenile records must yield to a defendant's constitutional rights. In State v. Toledano, 391 So.2d 817, 820 (La.1980), the court said:
... the extreme importance and constitutional status of the right to confrontation (which includes the reasonable opportunity to impeach the witness' credibility) requires that any statutory right to confidentiality of juvenile proceedings under these circumstances must yield if the discrediting value of a prior juvenile adjudication is such that its disclosure is essential to a fair trial.
In State v. Francis, 93-953 (La.App. 5 Cir. 3/16/94), 635 So.2d 305, 307-308, the court expanded on these conflicting tenets:
Indeed, the Sixth Amendment to the U.S. Constitution guarantees the right of an accused in a criminal prosecution `to be confronted with the witnesses against him.' The principal interest secured by this right is the right to cross-examine witnesses. State v. Haywood, 491 So.2d 1318 (La.1986). This interest was recognized and articulated by the United States Supreme Court in Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974) wherein it held that the right of confrontation is paramount to the state's policy of protecting a juvenile offender. Additionally our State Constitution expressly guarantees a defendant the right to cross-examine adverse witnesses. La. Const. art. 1, Sec. 16.
In Toledano, supra, the Court held that a trial court errs when it denies a defense request for production of a juvenile witness' `rap sheet' during cross-examination without first determining the content of the `rap sheet' The proper procedure, as set forth in Toledano, is that, upon request by defense counsel for specific relevant evidence with possible impeachment value, the trial judge must order submission of the witness' record of juvenile adjudications for an in-camera inspection to determine materiality. The issue then becomes whether the witness' juvenile adjudications have such discrediting value that there exists a reasonable likelihood that evidence of the adjudications would have affected the verdict and thus, must be viewed as evidence favorable to the accused.
In this case, defendant argues that the record fails to show that the trial court made an in-camera inspection of the juvenile record prior to ruling that record inadmissable at trial. Defendant further argues that the trial court applied the wrong standard in determining the record's admissibility, because the trial court told defendant he failed to show a compelling need before juvenile convictions could be introduced, when in fact, the defendant only needs to show that the probative value of the witness' prior juvenile convictions (for impeachment purposes) outweighed its prejudicial effect on the jury.
The state contends that the trial court did conduct an in-camera inspection, and that the court was correct in its ruling.
We see no error in the trial court's refusal to allow the admission of the witness' prior juvenile convictions into evidence at trial. *1190 Even had the state been allowed to introduce Leonard Joseph's juvenile criminal record into evidence and, thereafter, cross-examine him regarding the contents, thereby damaging his credibility, the state presented two other eyewitnesses to the crime, Williams and Gordon, who both testified that the defendant was the one who shot the victim. There is nothing in the rap sheet that is of such a discrediting value that there is a reasonable possibility that it would have affected the jury's verdict. We find no merit to this assignment of error.

HEARSAY
By this assignment of error, the defendant complains that the trial judge erred in permitting the state to elicit impermissible hearsay testimony from five of its witnesses.
Hearsay is a statement made out of court offered as evidence in court to prove the truth of the matter asserted by the statement. La. C.E. art. 801; State v. Everidge, 96-KO-2647, 96-K-2665 (La.12/2/97), 702 So.2d 680. La. C.E. art. 802 provides that "[h]earsay is not admissible except as otherwise provided by this Code or other legislation." Hearsay is excluded because the value of the statement rests on the credibility of the out-of-court asserter who is not subject to cross-examination and other safeguards of reliability. State v. Everidge, supra.
This Court has held that evidence is not hearsay and is thus admissible if it is introduced to show that the utterance occurred or that the conversation took place rather than to show the truth of the matter asserted. State v. Schexnayder 96-98 (La.App. 5 Cir.11/26/96), 685 So.2d 357, 367, writ denied, 97-0067 (La.5/16/97), 693 So.2d 796, cert. denied, ___ U.S. ___, 118 S.Ct. 115, 139 L.Ed.2d 67, reh'g denied, ___ U.S. ___, 118 S.Ct. 590, 139 L.Ed.2d 426.
Moreover, although a statement may constitute inadmissable hearsay, if the statement is merely cumulative or corroborative, the admission of such statement is harmless error. State v. Winfrey, 97-427 (La.App. 5 Cir. 10/28/97), 703 So.2d 63; State v. Pendelton, 96-367 (La.App. 5 Cir. 5/28/97), 696 So.2d 144, 152; State v. Pratt, 95-762 (La. App. 5 Cir. 2/27/96), 671 So.2d 21, 24.
Defendant first alleges that state witness, Detective Gurtner, gave hearsay testimony concerning the gang membership.
In State v. Watson, 449 So.2d 1321, 1328 (La.1984), cert. denied, 469 U.S. 1181, 105 S.Ct. 939, 83 L.Ed.2d 952 (1985), the Louisiana Supreme Court stated as follows:
A witness is generally competent to testify that a statement was made to him so long as no attempt is made to vouch for the credibility of its contents. State v. Ford, 368 So.2d 1074 (La.1979); State v. Edwards, 406 So.2d 1331 (La.1981), cert. denied, 456 U.S. 945, 102 S.Ct. 2011, 72 L.Ed.2d 467. A police officer, in explaining his own actions, may refer to statements made to him by other persons involved in the case. Such statements are admitted not to prove the truth of the assertion, but to explain the sequence of events leading to the arrest of the defendant from the viewpoint of the investigating officer. State v. Calloway, 324 So.2d 801 (La.1976); State v. Smith, 400 So.2d 587 (La.1981); State v. Edwards, supra. (Emphasis added).
Reviewing the testimony of Detective Gurtner, we find that he did not testify regarding the substance of anything that another person told him. In actuality, he testified as to the results of his investigation. Therefore, his testimony was not hearsay and admitting such into evidence did not constitute harmful error.
Defendant next argues that Leonard Johnson gave hearsay testimony concerning the relationship between the victim and the defendant. Leonard Johnson testified that the defendant said that he was tired of waiting for his money (from the victim to pay for the beeper) and that the victim was trying to "play him out his money."
A statement is not hearsay under La. C.E. art. 801 D(2)(a) if:
... the statement is offered against a party and is his own statement, in either his individual or a representative capacity.
La. C.E. art. 801 A(1) defines "statement" as an oral or written assertion. The *1191 Comments to Article 801 D(2) state that the rationale behind this exception to the hearsay rule is that a party should not be permitted to complain that he himself had no opportunity to cross-examine or that he is unworthy of credence save when speaking under sanction of an oath.
In this case, Joseph testified to statements made by the defendant, which were introduced by the state against the defendant, to show the defendant's motive for killing the victim. Therefore, these statements did not constitute hearsay under La. C.E. 801 D(2) and, accordingly, were properly admitted into evidence. See State v. Walters, 25,587 (La. App. 2 Cir. 1/19/94), 630 So.2d 1371.
The remainder of the defendant's complaints regarding hearsay concern statements made by Mr. Joseph and his mother, Ms. Wanda Joseph Johnson, and by Mr. Gordon, Jr. and his father, Mr. Michael Gordon, Sr.
Both Joseph and Gordon testified that after giving the police statements regarding the identity of the perpetrator, they went home and spoke with their respective parents, Ms. Wanda Joseph Johnson and Mr. Michael Gordon, Sr., who told their respective children that they should go back to the police and tell them the truth regarding the identity of the perpetrator.
Ms. Wanda Joseph Johnson testified regarding what her son, Leonard Joseph, had told her upon returning to their home after giving the police two statements that incriminated Williams.
Mr. Gordon, Sr. testified that his son broke down in tears, told him that the defendant shot the victim, and that he had lied to the police in his first two statements because he was friends with the defendant and, therefore, he did not want to "rat" on him.
Defendant contends that these statements were impermissible hearsay. The state contends that the statements were not offered for the truth of the matter asserted, but merely to show the state of mind of the juveniles and their parents during the events that followed the shooting.
In State v. Johnson, 381 So.2d 436, 438 (La.1980), the Louisiana Supreme Court explained that while it is in correct to excuse the introduction of inadmissible hearsay only on the grounds that a witness who has heard hearsay appears in court and is subject to cross-examination, nevertheless, in many cases it will be harmless error to admit hearsay if the declarant of the out of court statement appears as a witness in court. See State v. Martin, 356 So.2d 1370, 1374 (La.1978).
In the present case, we hold that it was harmless error to permit the juveniles to testify regarding what their parents told them, and that it was also harmless error to permit the parents to testify regarding what their children told them, because both the children and the parents testified and, therefore, were subject to cross-examination. Moreover, the parents' testimony and the childrens' testimony was corroborative. The jury had already been informed that the juveniles first implicated Williams and then later recanted their statements and implicated the defendant. Therefore, we see no reversible error in the admission of these statements into evidence.

ERRORS PATENT
We have reviewed the record for errors patent according to La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990); and State v. Godejohn, 425 So.2d 750 (La.1983), and find none.
AFFIRMED.