550 So.2d 399 (1989)
STATE of Louisiana, Plaintiff-Appellee,
v.
Paul WORTHEN, Defendant-Appellant.
No. CR 89-40.
Court of Appeal of Louisiana, Third Circuit.
October 4, 1989.
*400 David L. Wallace, Bradley, Wallace & O'Neal, DeRidder, for defendant-appellant.
William C. Pegues, III, Dist. Atty., DeRidder, for plaintiff-appellee.
Before STOKER, DOUCET and YELVERTON, JJ.
DOUCET, Judge.
On August 19, 1988, appellant, Paul Worthen, was indicted by a grand jury for aggravated rape, a violation of La.R.S. 14:42, and aggravated burglary, a violation of La.R.S. 14:60. Appellant was found guilty as charged by a twelve person jury on October 19, 1988. The trial court subsequently sentenced appellant to life imprisonment without benefit of probation, parole or suspension of sentence for the aggravated rape conviction, and a concurrent term of thirty years at hard labor for the aggravated burglary conviction. Appellant seeks review of his conviction based on six assignments of error. Assignment of error number three has not been briefed and is considered abandoned. State v. Dewey, 408 So.2d 1255 (La.1982).
FACTS:
At approximately 3:00 a.m. on July 7, 1988, the victim was sleeping in her Beauregard Parish apartment with her three-year-old son. The victim was awakened by an intruder who placed his hand over her mouth, warned her he was armed with a gun and ordered her not to scream. The victim began screaming and kicked the assailant in the stomach. The assailant responded by pulling the victim's hair and punching her several times in the face. After the intruder ripped off her clothing, the victim bit the assailant on the right forearm with sufficient force for the victim to taste blood. Despite her attempts at resistance, the intruder raped the victim. After the rape, the offender offered the victim money and asked her to accompany him to Houston.
Police officers investigating the rape found evidence of forced entry through a rear window and discovered two knives on the bedroom floor next to the bed where the offense occurred. The victim testified the knives were not on the floor when she went to bed. The investigation led to the arrest of appellant, Paul Worthen, who lived in the area of the rape. A physical lineup was organized where six persons were requested to repeat statements made by the assailant. The victim made a positive voice identification of appellant after hearing only three persons in the lineup. Appellant had a bite mark on his right forearm.
ASSIGNMENT OF ERROR NO. 1
By this assignment of error appellant urges that the trial judge erroneously denied defense counsel's objection to the actions by the prosecutor in exercising peremptory challenges to exclude two blacks from the jury. Appellant acknowledges the prosecutor was able to articulate racially neutral reasons for exercising the challenges. However, defense counsel emphasizes that the black appellant was accused of raping a white woman in the presence of her child and alleges the jury sitting in judgment should have been proportional to the racial makeup of the community.
Although appellant seeks to base his argument on Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), that case does not support his argument. Batson prevents purposeful discrimination in selection of a petit jury and enunciates a procedure for defendants to form a prima facie case of purposeful discrimination. When such a showing is made, the state is required to put forth a satisfactory racially neutral explanation for exercising peremptory challenges. The Batson court specifically reiterated the rule of law that a criminal defendant does not have a right to a petit jury composed in whole or in part of persons of his own race. Batson, supra, 106 S.Ct. at 1716.
*401 In the instant case, appellant acknowledges that the state satisfactorily explained in racially neutral terms the purpose for exercising two peremptory challenges to exclude blacks. Indeed, the transcript demonstrates that the two jurors challenged peremptorily had significant ties to appellant's family. The factors explained by the prosecutor as reasons for exercising these challenges appear in the record. Appellant made no allegation through motion to quash nor any showing to suggest that composition of the petit jury venire violated the constitutional requirement of a fair cross section of the community. Therefore, we find that this assignment of error has no merit.
ASSIGNMENT OF ERROR NO. 2
By this assignment of error, appellant contends that the trial judge erred in refusing to grant a mistrial after an unprovoked outburst by the victim during cross-examination. Appellant insists that the emotional outburst was highly prejudicial and caused the jurors' fact-finding role to be augmented by the burden of protecting "this young white woman from further damage." To emphasize the prejudice suffered, appellant focuses on the victim's testimony of an inability to physically identify the intruder. Appellant maintains the admonition given by the trial court could not sufficiently protect the accused from the damage suffered by the victim's actions.
During cross-examination, defense counsel began questioning the victim concerning the accuracy of her description of the assailant's pants. When the victim stated her assailant wore light colored blue jeans, defense counsel inquired whether she saw or felt the jeans and how she knew they were jeans. The victim reacted by stating, "Well, I guess I'm assuming they were blue jeans then. They were light colored. He raped me, okay? And I know it was him. He's got the bite mark on his arm to prove it." The trial judge twice attempted to have the witness discontinue and defense counsel twice requested permission to approach the bench. The victim was crying and continued, stating, "I bit him", and "He raped me! He better not get away." At that point, the jurors and the victim were removed from the courtroom. The jurors were instructed not to discuss the case. The victim exclaimed, "I'm not the one on trial here. Nobody can hide." She slammed the courtroom door and continued screaming in the hallway.
Defense counsel moved for a mistrial based on the outburst of the witness and emphasized the victim was pointing her finger at appellant during the dialogue. The trial judge acknowledged that the victim's demeanor was not provoked by defense counsel's style of questioning and agreed that the outburst was unjustified. However, the judge, noting that the rape victim's emotional state was understandable, stated that no information was added by the outburst and felt that the testimony of the witness was accusatory without the outburst. The trial judge then recalled the jury and instructed them that the outburst was improper and should be disregarded. The court reminded those on the jury that the state must prove "Guilt beyond a reasonable doubt. This is not to be based on opinions or emotional outbursts. It is to be based on all of the relevant evidence that is presented in the courtroom."
La.C.Cr.P. art. 775 provides for a mistrial if prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial or where authorized by art. 770 or 771. La.C.Cr.P. art. 771 provides the court with discretion to grant a mistrial where a witness makes an irrelevant or immaterial remark which prejudices the defendant and an admonition is not sufficient to assure the defendant of a fair trial. State v. Belgard, 410 So.2d 720 (La.1982). Mistrial constitutes a drastic remedy and, unless conduct falls within mandatory mistrial provisions of art. 770, the judge has broad discretion in determining whether the conduct is so prejudicial to defendant that he could not receive a fair trial. State v. Domangue, 350 So.2d 599 (La.1977); State v. Wright, 441 So.2d 1301 (La.App. 1st Cir.1983). Generally, unsolicited statements and spontaneous conduct of a witness are not grounds for mistrial and any prejudicial injury may be cured by *402 an admonition. State v. Newman, 283 So.2d 756 (La.1973).
In the instant case, the witness was the victim of a violent sex crime and the content of her testimony was understandably emotional. Her outburst occurred after testifying to positively identifying appellant by voice at a lineup shortly after the rape and testifying to biting her assailant with sufficient force to draw blood. Appellant was on trial for the offense and the conduct of the victim, although improper, did not provide facts which were not legally introduced before or after the outburst. Finally, the transcript exhibits a strong admonition by the trial judge instructing the jurors to disregard the unwarranted outburst and reminding the jury that the state may only meet its heavy burden of proof through competent evidence.
The type of witness misconduct in the instant case can be analogized to the activity in State v. Sneed, 316 So.2d 372 (La. 1975). In Sneed, the wife of a murder victim who had also been severely beaten during the offense testified concerning the incident. Upon completing her testimony, the witness stated to the defendant, "Wayne, why did you kill Mr. Jones?" The court ruled that a strong admonition was sufficient to preserve the defendant's right to a fair trial and found no abuse of discretion in the judge's denial of a motion for mistrial. Similarly, under the circumstances of the instant case, the trial judge took immediate action after the witness' outburst and preserved appellant's right to a fair trial. The trial court did not abuse its broad discretion in denying the mistrial sought by defense counsel.
For the reasons stated, we find that this assignment of error is without merit.
ASSIGNMENT OF ERROR NO. 4
By this assignment of error, appellant maintains the trial court erred by allowing the state to present two rebuttal witnesses although these witnesses were not placed under the rule of sequestration prior to trial. Appellant alleges the trial court should not have permitted the testimony because these witnesses admitted discussing the case between themselves and there was no way to determine whether the witnesses were present in the courtroom during the trial.
Upon its own motion the court may, and upon request by the state or the defendant the court is required to, order that witnesses be excluded from the courtroom and refrain from discussing the facts of the case or the testimony of any witness with anyone other than the prosecutor or defense counsel. La.C.Cr.P. art. 764. The purpose of the rule is to assure that a witness testifies from his own knowledge without being influenced by testimony of prior witnesses and to strengthen the role of cross examination in developing the true facts. State v. Warren, 437 So.2d 836 (La.1983); State v. Green, 470 So.2d 434 (La.App. 3rd Cir.1985), writ denied, 475 So.2d 355 (La.1985). Violation of a sequestration order does not mandate exclusion of the witness' testimony. Absent evidence that the testimony has been tainted by the violation or that the purpose of the order has been thwarted, the trial judge has broad discretion in permitting the testimony. State v. Parker, 421 So.2d 834 (La. 1982), cert. denied, 460 U.S. 1044, 103 S.Ct. 1443, 75 L.Ed.2d 799 (1983); State v. White, 508 So.2d 982 (La.App. 3rd Cir. 1987), writ denied, 512 So.2d 1184 (La. 1987). Disqualification of testimony is disfavored because absent consent, connivance or knowledge of the party for whom the witness is to testify, exclusion would inhibit the search for truth and unfairly penalize the party. State v. Armstead, 432 So.2d 837 (La.1983).
During rebuttal, the state called Brenda Brister and her son, Jonathan Brister, to testify. The two live in the housing complex where the rape occurred and rebutted appellant's assertion that he did not know the victim lived in the apartment, had never seen her and had never expressed an interest in some type of relationship with her. The pair had apparently been interviewed by the prosecutor approximately one week prior to trial but they were not subpoenaed as witnesses. Therefore, they were not present prior to trial when the witnesses were placed under a sequestration order. *403 Prior to their testimony on rebuttal, defense counsel sought exclusion of the testimony for violation of the court's order of sequestration of witnesses. In a hearing outside the presence of the jury, Brenda Brister stated she had not been present in the courtroom during any of the previous testimony and had not discussed the facts with anyone that day. She acknowledged picking up her son from school and informing the child he was to testify in court but informed the court they did not discuss the substance of their testimony. The mother acknowledged speaking with the prosecutor the week prior to trial and the son testified that he had been interviewed by the prosecutor and an officer on the day before trial.
The facts do not actually constitute a violation of the rule of sequestration where the witnesses were not placed under an order, were not in court during presentation of the case and did not discuss details of the case with one another. Even if the mother or her son spoke with the prosecutor after the issuance of the sequestration order there is no provision precluding the district attorney from discussing testimony with a witness. State v. Green, supra. There is nothing in the record to suggest the testimony of the witnesses was tainted or that the purpose of the order was thwarted. Defense counsel was fully able to cross examine each witness to develop the facts of the case. Under the circumstances, exclusion of the testimony was not mandated nor did the trial judge abuse his discretion in allowing the testimony.
Therefore, we find that this assignment of error is without merit.
ASSIGNMENT OF ERROR NO. 5
By this assignment of error, appellant contends that the trial judge erred by refusing to grant a mistrial when the jury interrupted deliberations after four hours and asked the trial judge, "If the judgment we render is guilty, can it be appealed?" Appellant argues the note implies the jurors were unable to agree on the verdict. Additionally, appellant insists the question demonstrates the jurors were swayed by the improper consideration that any error to a factual finding would be corrected by an appellate court and that the jury abandoned its role in deciding the case.
After jury deliberations of approximately four hours, a note was delivered to the trial judge asking whether appellant could appeal a guilty verdict. The judge informed the jurors he was unable to answer the question and further charged the jurors as follows:
"I have to instruct you ladies and gentlemen that it is your duty as jurors to reach a just verdict in this case if that can be done. Now, that duty should and must be performed without regard to any future legal steps that might be available to either the State or to the defendant. In other words, it's your duty to decide this case based on the evidence presented to you in this Courtroom and the law that you have been given by the Court. And in doing that duty, you should not be influenced by anything else, other than the evidence that you have heard and the law that you have been given as being applicable to the case. Your duty is one here and now, and of course, if you can, as I say, reach a verdict, it is your duty to do so. If you cannot do so, then of course, you cannot do so. But I cannot go further in any explanation of theor answer to the question that was posed to me, and I hope you understand. I am under very strict limitations in what I can tell you ladies and gentlemen beyond what I have already told you. So with that, I will ask you to retire back to the jury room for further deliberations."
The court then denied defense motion for a mistrial finding the length of time the jurors had deliberated to be reasonable and declining to speculate on the reasons for the question posed.
Where a jury is unable to agree upon a verdict, the trial judge is authorized to grant a mistrial. La.C.Cr.P. art. 775. The length of time to be afforded a jury for deliberation is a matter within the discretion of the trial judge. State v. Simmons, 414 So.2d 705 (La.1982). The complexity and severity of the case is an important *404 factor in the determination of what is a reasonable time. There is no requirement that a judge declare a mistrial at the initial sign of trouble. State v. Lowenfield, 495 So.2d 1245 (La.1985), cert. denied, 476 U.S. 1153, 106 S.Ct. 2259, 90 L.Ed.2d 704 (1986). However, the trial judge's action should not coerce the jury such that the defendant is denied a fundamentally fair trial. State v. Simmons, supra.
Except for the note presented to the trial judge, there is nothing to suggest the jurors were deadlocked. The note seeks further guidance and does not inform the court of an inability to reach a verdict. The four hours expended deliberating at the time of the motion is not unreasonable in light of the complexity and severity of the case. The trial judge therefore, did not abuse his discretion in declining to use the drastic remedy of a mistrial based on an inability to reach a verdict on the basis of the time spent deliberating.
Appellant argues that the content of the note exhibits some jurors wishing to vote not guilty were being swayed by the argument that if the jury found the accused guilty and an injustice were done, an appellate court would correct the erroneous verdict. "Based upon the appearance of the thought processes of the jury," appellant insists he was entitled to the declaration of a mistrial because the jury exhibited a willingness to be influenced by improper and irrelevant factors.
Appellant's argument is similar to those raised in capital cases where jurors at the sentencing hearing request information concerning possible release if the defendant is not sentenced to death or where the idea of appellate review is introduced to the jury. In State v. Jones, 474 So.2d 919 (La.1985), cert. denied, 476 U.S. 1178, 106 S.Ct. 2906, 90 L.Ed.2d 992 (1986), the court noted that it was improper for the jury to be conveyed the message that its responsibility is lessened by the availability of appellate review. The court noted that such comments left uncorrected present an intolerable danger that the jury will choose to minimize the importance of its role.
In State v. Lindsey, 404 So.2d 466 (La. 1981), appeal after remand, 428 So.2d 420 (La.1983), cert. denied, 464 U.S. 908, 104 S.Ct. 261, 78 L.Ed.2d 246 (1983), the court remanded for new trial on sentencing where the trial court discussed the availability of a commuted sentence pursuant to a jury inquiry. The court analyzed the appropriate procedure should a jury request such advice from the trial judge. The trial court should inform the jury that it is duty bound to disregard how other bodies may act and must base its decision on the facts and the legal issue at hand. Where an improper consideration is interjected, the trial judge must inform the jury of its duty and admonish the jury not to consider the inappropriate factor about which the jury inquired. Lindsey, supra, at 487.
Although the preceding cases address the role of the jury in capital sentencing and bases its holding on Eighth Amendment arbitrariness considerations, the analysis is useful in addressing appellant's argument. In the instant case, the jury's inquiry was unrelated to the jury's factfinding role and an answer to the jury could have resulted in the jury minimizing the importance of the role. The judge's instruction protected the accused from being found guilty based on the irrelevant factor that an appeal was available in the event of conviction. The court's strong admonition guaranteed appellant a fair trial. The fact that the jurors deliberated an additional two hours after the trial court's admonition shows that the jurors did not abandon their decision-making role. The trial court properly declined to order a mistrial based on the inquiry by the jury.
Thus, we find that this assignment of error is without merit.
ASSIGNMENT OF ERROR NO. 6
Appellant alleges in this assignment of error that the evidence presented at trial was insufficient to support his conviction such that the trial court erred in denying post-trial motions for acquittal and new trial.
The standard of review when considering the sufficiency of the evidence to support a *405 criminal conviction is whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Where the key issue is not whether the crimes had been committed, but whether the defendant is the perpetrator, the state must negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Smith, 430 So.2d 31 (La.1983); State v. Brady, 414 So.2d 364 (La.1982).
In brief, appellant acknowledges that there was no issue at trial whether the crimes charged had been committed but alleges the evidence adduced does not prove beyond a reasonable doubt that appellant was the assailant. Appellant emphasizes the victim was unable to give investigators a physical description of her assailant and failed to recognize appellant's noticeable limp although she testified her assailant left and reentered the room twice during the incident. Appellant also argues misidentification because a state crime lab expert testified palm prints taken from the window identified by investigators as the point of forced entry were not those of appellant. Appellant also attacks the thoroughness of the investigation because the crime lab was sent hair samples but not requested to make a comparison.
The victim was unable to positively identify her assailant because of lack of lighting during the rape. However, the victim described her assailant as approximately five feet, seven inches tall and weighing 130-140 pounds with a short haircut. Appellant is five feet, eight inches tall and weighs 130 pounds. The victim also stated her assailant wore a shirt and jacket which were similar to those seized from appellant at the time of his arrest. Although the victim testified that her assailant walked into and out of the room, she explained that she did not watch him or notice his limp as she was comforting and being comforted by her son.
At trial, appellant denied raping the victim, testified he did not know the victim and denied speaking with other neighbors about the victim prior to the rape. However, the prosecutor called witnesses on rebuttal. One testified that on the day prior to the rape, appellant inquired about the victim. The other stated appellant expressed an intent to have intercourse with the victim.
Lastly, the victim's positive voice identification came on the day following the rape and was unequivocal. Most importantly, the individual identified in the lineup had been bitten on the arm in the same area described by the victim. Appellant claimed that the wound occurred during a fight two days before the rape and that it had a scab. The officer who arrested appellant approximately ten hours after the rape denied the bite wound had a scab and described it as "fresh" with dried blood. A second officer corroborated this testimony. Additionally, a dentist testified that the victim's bite matched up perfectly with the marks on appellant's arm.
The evidence presented by the state sufficiently negates any reasonable probability that appellant was misidentified as the assailant in this matter. Viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found appellant guilty beyond a reasonable doubt.
Thus, we find that this assignment of error is without merit.
Accordingly, for the reasons assigned, the conviction and sentence of the trial court is affirmed.
AFFIRMED.