672 So.2d 197 (1996)
STATE of Louisiana, Appellee,
v.
Mark Allen CRAWFORD, Defendant-Appellant.
No. CR 95-1352.
Court of Appeal of Louisiana, Third Circuit.
April 3, 1996.
*199 Bernard E. Boudreaux Jr., Dist. Atty., Franklin, Lori Ann Landry, New Iberia, for State.
Kevin Patrick Monahan for Mark Allen Crawford.
Before DOUCET, C.J., and SULLIVAN and GREMILLION, JJ.
DOUCET, Chief Judge.
On March 9, 1994, the defendant, Mark Crawford, was indicted on one count of aggravated rape, a violation of La.R.S. 14:42(A)(3), and one count of aggravated oral sexual battery, a violation of La.R.S. 14:43.4(A)(3). On April 6, 1994, defendant was arraigned on and pled not guilty to both charges. On March 13-17, 1995, defendant *200 was tried before and found guilty by a twelve person jury on the charge of aggravated rape. On March 27, 1995, defendant was sentenced to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. Defendant now appeals his conviction alleging seven assignments of error and requests a new trial.

FACTS:
On July 31, 1993, in the Parish of Iberia, the defendant, Mark Crawford, entered the trailer of the victim, Tiffany Keal, and raped her. Crawford, who was a neighbor of the victim, threatened her with a knife.

ERROR PATENT:
La.Code Crim.P. art. 920 provides the scope of review on appeal, as follows:
The following matters and no others shall be considered on appeal:
(1) An error designated in the assignment of errors; and
(2) An error that is discoverable by a mere inspection of the pleadings and proceedings without inspection of the evidence.
In accordance with this article, all appeals are reviewed by this court for errors patent on the face of the record. Upon reviewing the record, we found one error patent. La. Code Crim.P. art. 880 provides that when imposing sentence the court shall give the defendant credit toward service of his sentence for time spent in actual custody prior to the imposition of sentence. The record indicates the trial court did not do so. Thus, we amend the sentence to reflect that the defendant is given credit for time served prior to the execution of the sentence. See La.Code Crim.P. art. 882(A). Resentencing is not required; however, we remand this case and order the district court to amend the commitment and minute entry of the sentence to reflect that the defendant is given credit for time served. State v. Moore, 93-1632 (La.App. 3 Cir. 5/4/94), 640 So.2d 561, writ denied, 94-1455 (La.3/30/95), 651 So.2d 858.

ASSIGNMENT OF ERROR NO. 1:
By his first assignment of error, defendant contends that the emotional manifestations of the prosecuting witness in the jury's presence constituted substantial prejudice and that the trial judge abused his discretion in not granting a mistrial. When the judge asked the State to call its first witness, the prosecutor asked permission to go get her. The prosecutor left the courtroom for several minutes and returned with the victim, Tiffany Keal, who was crying. The trial judge called for a recess, and out of the hearing of the jury, defense counsel motioned for a new trial. He argued his client could not get a fair trial before the then empaneled twelve jurors because they had been tainted by the victim's wailing and crying. He further argued that an admonition would not suffice. The trial judge denied the motion, stating he would allow the witness to testify if she could compose herself. While the jury was out and the judge conferred with counsel, the witness composed herself. The jury returned, Keal testified without crying, and the trial judge instructed the jury that their judgment should not be influenced by the visible manifestations of emotional upset exhibited by the victim or any other witness. Defendant appeals the trial judge's ruling, saying the witness's outburst merited a mistrial.
La.Code Crim.P. art. 775 states in pertinent part:
* * * * * *
Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771.
A mistrial is a drastic remedy and a trial judge has broad discretion in determining whether conduct is so prejudicial so as to deprive an accused of a fair trial. State v. Worthen, 550 So.2d 399 (La.App. 3 Cir.1989). In their briefs, both defendant and the State agree that unsolicited statements and spontaneous conduct of a witness are usually not grounds for mistrial. State v. Newman, 283 So.2d 756 (La.1973), certiorari denied, 415 U.S. 930, 94 S.Ct. 1442, 39 L.Ed.2d 489 (1974). The determination of whether prejudice has resulted is within the sound discretion of the trial judge whose ruling should not be disturbed absent abuse of discretion. *201 State v. Franklin, 520 So.2d 1047 (La.App. 3 Cir.1987). In State v. Hopkins, 626 So.2d 820 (La.App. 2 Cir.1993), the court noted:
In State v. Wright, 441 So.2d 1301 (La. App. 1st Cir.1983), the first circuit affirmed the denial of a mistrial motion prompted by a spectator's outburst at the close of trial. Removal of that person from the courtroom and an admonition to the jury sufficiently cured any possible prejudice. Likewise, in State v. Domangue, 350 So.2d 599 (La.1977), the supreme court deemed a mistrial unnecessary when a rape victim's spouse began crying during closing arguments and before being escorted outside.
Id. at 823.
In Hopkins, the victim's family appeared upset and cried during closing arguments. The trial judge denied a mistrial and did not immediately admonish the jury. She did later charge them not to be influenced by sympathy, passions, prejudice, or public opinion.
In Worthen, 550 So.2d 399, this court affirmed the denial of a motion for a mistrial based on an unprovoked verbal outburst and crying by the victim, who was being cross-examined. The victim in Worthen had been raped, as was the victim in the case sub judice. The trial judge noted and this court agreed that the victim's emotional state was understandable. This court further cited the strong admonition to the jury by the trial judge, in affirming the defendant's conviction in Worthen.
As in Worthen, the trial judge in the instant case took immediate action to remove the jurors from the courtroom, instructed the victim to try to maintain her composure while testifying, and subsequently admonished the jury after the victim testified. The record reveals no verbal outburst by the victim in this case. Defense counsel argues in brief that this case rises to the level of substantial prejudice and warranted mistrial, in part, because the prosecutor knew the victim's emotional state before she ushered her into the courtroom. Defendant has not explained the relevance of that fact nor has he cited any authority which would support his argument. Thus, we find the victim's crying was understandable and not substantially prejudicial. This assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 2:
By his second assignment of error, defendant contends the hearsay testimony given by Barbara Touchet, the mother of the victim, Abby Romero, aunt of the victim, and Sheriff's Deputy Tim Ackal, who responded to Keal's 911 call, was improperly admitted under the La.Code Evid. art. 801(D)(4). All three witnesses stated what the victim had told each of the witnesses within thirty minutes before or after the crime. Defense counsel objected to the statements saying they were hearsay. The trial judge admitted the statements under La.Code Evid. art. 801(D)(4) which states:
D. Statements which are not hearsay. A statement is not hearsay if:
* * * * * *
(4) Things said or done. The statements are events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive and spontaneous words and acts of the participants, and not the words of the participants when narrating the events, and which are necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction.
Touchet's testimony included a statement made by the victim to her, over the telephone, just prior to the rape, while the defendant was in the house with her daughter. Once Touchet was made aware, through her phone conversation with the victim that Mark Crawford was in the trailer with her and that Tiffany feared him, Touchet immediately drove with her sister and brother-in-law to the trailer. The rest of Keal's statements repeated by Touchet took place immediately upon Touchet's arrival at the trailer, within thirty minutes of the rape.
The doctrine of res gestae includes not only spontaneous utterances and declarations made before and after the commission of the crime, but also testimony of witnesses and police officers pertaining to *202 what they heard or observed before, during, or after the commission of the crime if the continuous chain of events is evident under the circumstances. [Citations omitted.]
State v. Armstrong, 453 So.2d 1256, 1260 (La.App. 3 Cir.), writ denied, 457 So.2d 16 (La.1984). See also State v. Leonard, 543 So.2d 975 (La.App. 3 Cir.1989). The phone call which occurred just prior to the rape was admissible under La.Code Evid. art. 801(D)(4)[1]. The other testimony, i.e., the victim's comments to her mother, as well as those made to the other witnesses, were admissible either under La.Code Evid. art. 801(D)(4) or art. 803(2) which states:
The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
* * * * * *
(2) Excited utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.
In State v. Reaves, 569 So.2d 650 (La.App. 2 Cir.1990), writ denied, 576 So.2d 25 (La. 1991), the court stated:
LSA-C.E. Art. 803 sets forth numerous exceptions to the hearsay rule, one being an excited utterance, defined as `[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.' LSA-C.E. Art. 803(2). This exception requires an occurrence or event sufficiently startling to render an observer's normal reflective thought processes inoperative. Further, the statement of the declarant must have been a spontaneous reaction to the occurrence or event and not the result of reflective thought. State v. Henderson, 362 So.2d 1358 (La.1978); State v. Holland, 544 So.2d 461 (La.App.2d Cir.1989).
Of the many factors that enter into determining whether a declarant was under the stress of an exciting event, probably most important is the time factor. The trial court must decide whether the interval between the event and the statement was long enough to permit a subsidence of emotional upset and a restoration of a reflective thought process. Additional factors which may indicate that a statement was the result of reflective thought, but do not automatically justify exclusion, are as follows: evidence that the statement was self-serving or made in response to an inquiry; expansion of the excited utterance beyond a description of the event and into past or future facts; and proof that, between the event and the statement, the declarant performed tasks requiring reflective thought processes. State v. Henderson, supra.
Being raped at knife point is certainly an event startling enough to have deprived E.A. of her reflective thought process. Accordingly, it must be determined whether sufficient time had lapsed between the rape and the statements so that her emotional upset would have subsided.
Testimony established that the incident occurred between 5:00 and 5:15 a.m. Within minutes, E.A. called her employer. Crying, she stated that `the Reaves boy' had come to her residence armed with a knife, had `forced himself' on her, and had cut her in the process. As previously stated, two officers reached the house around 5:45 a.m. Shortly thereafter, a neighbor, Mrs. Mattie Flournoy, arrived to find the victim very upset, moaning and crying. E.A. related the event to her and identified defendant as the rapist. Later, between 7:00 and 8:00 a.m., Mrs. Woodard, the employer, drove the victim to the coroner's office for the rape test. During the drive, E.A. recounted the incident in slightly more detail.
No contemporaneous objection arose to testimony of the telephone conversation, which the defense brief admits to have ensued within minutes of the attack. With respect to the statement to Mrs. Flournoy, the trial judge concluded that the assertions *203 transpired under influence of the exciting event. The evidence reasonably supports that factual determination. Less than an hour, probably about 45 minutes, had elapsed between the incident and the statement. Mrs. Flournoy described E.A. as `very upset, and moaning, crying.' Arriving at the home after the neighbor, Mrs. Woodard found the victim still nervous, upset, and pacing the floor. Although well acquainted for over 17 years, her employer had never seen the victim cry or become so emotional before, even after the death of her parents.
Id., at 653.
The Reaves court found the testimony qualified under the excited utterance exception. Likewise, in the case sub judice, the raping of the victim at knife point was clearly an event sufficiently startling to render normal reflective thought processes inoperative. All three witnesses stated that the victim was crying and visibly upset when relating her account of the attack to them. Touchet described Keal as crying and hollering. Romero, who arrived with Touchet, described Keal as terrified, screaming and shaking. She further stated Keal was still crying and upset when they arrived at the hospital, which was subsequent to Keal making statements to Touchet, Romero and Ackal. Ackal, who responded to Keal's 911 call and was the first officer to arrive on the scene, said Keal was shaking and crying when he arrived. Also notable is the fact that the witnesses all spoke with the victim within thirty to forty-five minutes of the rape. The statements made to the witnesses were spontaneous reactions of the victim made by her shortly after the criminal attack. Accordingly, we find the victim was still under the stress of the event when she made those statements. If anything, we find the case for admission of the statements in this case more compelling than those of the victim in Reaves.
Furthermore, Keal's statements to Romero constituted her initial complaint of sexually assaultive behavior, which makes them admissible under La.Code Evid. art. 801(D)(1)(d). As required by that article, Keal's testimony was consistent with Romero's statements and at trial the State claimed Keal's testimony to Romero was the first report of sexual abuse. See State v. Moran, 584 So.2d 318 (La.App. 4 Cir.), writ denied, 585 So.2d 576 (La.1991). Thus, this exception is also applicable.
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 3:
By his third assignment of error, defendant contends the trial judge erred in instructing the jury on the number of votes needed to convict and should have granted a mistrial instead of giving a corrective instruction. When the jurors retired for deliberations, they had been improperly instructed as to the number required to reach a verdict. Aggravated rape is punished by life imprisonment at hard labor and thus requires ten of the twelve jurors to concur to reach a verdict. La.Code Crim.P. art. 782. The trial judge improperly instructed the jurors that all twelve of them must concur in the verdict. After the jury had been deliberating for over two hours, the court realized the error and gave a corrective instruction explaining that only ten of the twelve jurors need concur to reach a verdict. The jury then went back into deliberations and eleven of the twelve found the defendant guilty. Defense counsel objected saying a corrective instruction was insufficient to remedy the prejudice resulting from the mistaken instruction and requested a mistrial.
Defendant claims the erroneous instruction made the verdict faulty as a matter of law in violation of La.Code Crim.P. art. 775(3). That article states in part:
A mistrial may be ordered, and in a jury case the jury dismissed, when:
* * * * * *
(3) There is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law.
The statute allows the trial judge discretion in deciding if a mistrial is required. A mistrial is a drastic remedy warranted only when the prejudicial conduct makes it impossible for a defendant to obtain a fair trial. The denial of a mistrial will not be disturbed absent an abuse of discretion. State v. *204 McFerson, 583 So.2d 516 (La.App. 3 Cir.), writ denied, 588 So.2d 113 (La.1991).
In State v. McMahon, 391 So.2d 1120 (La. 1980), the trial judge had failed to instruct the jurors as to the number required for a verdict. The trial judge then recalled the jury after three hours of deliberations to give them the omitted instruction. Defendant moved for a mistrial claiming she was prejudiced by the initial omission of the instruction because of the possibility that ten of the twelve jurors may have voted for acquittal but did not because they believed the verdict had to be unanimous. The supreme court noted that defendant's objection was to the trial judge's initial failure to give the instruction and that no prejudice had been shown in the delay. The court found the omission did not constitute prejudicial error.
We find this case very similar to McMahon. Defendant has failed to explain how he was prejudiced by the trial court's refusal to grant a mistrial. The judge's mistake did not cause a legal defect in the proceedings making the verdict reversible as a matter of law. This assignment of error also lacks merit.

ASSIGNMENTS OF ERROR NOS. 4 & 5:
Defendant has failed to brief these assignments on appeal, and they are thus considered abandoned. Uniform Rules, Courts of Appeal, Rule 2-12.4.

ASSIGNMENTS OF ERROR NOS. 6 & 7:
Defendant has combined these assignments into one. By this assignment, he contends the trial judge did not follow the mandates of State v. Prieur, 277 So.2d 126 (La. 1973) and its progeny in allowing the admission of other crimes evidence. He states that La.Code Evid. art. 404(B)(1) as applied in this case violates the Louisiana Constitution and clashes with La.Code Evid. art. 609.1(B) and La.Code Crim.P. art. 804(A)(1). The State filed a notice of its intent to use other crimes evidence. The State also filed two amended notices in this regard. All three notices informed the defense that the witnesses the State intended to call would testify as to acts of attempted rape or attempted assault. The State further asserted the evidence was admissible under La.Code Evid. art. 404(B)(1) to show intent, motive, system or modus operandi. Prieur hearings were held on November 22, 1994, and March 3, 1995, at which time the witnesses testified. The trial judge found the evidence of prior crimes showed a system and plan and thus the testimony the State sought to introduce, was properly admissible.
Defendant now appeals the constitutionality of La.Code Evid. art. 404(B)(1), as well as how that article was applied to him in the instant case.[2] He objects to the testimonies alleging they violate the Louisiana Constitution Art. I, § 15, in that the testimonies present a jeopardy problem for the defendant. He further argues the testimonies are inadmissible under La.Code Evid. art. 609.1(B), as well as La.Code Crim.P. art. 804(A)(1).
In answering defendant's allegations we will set out the law on the articles and discuss the validity of La.Code Evid. art. 404(B)(1) in their light. We will then proceed to analyze each witness's testimony in light of the requirements of La.Code Evid. art. 404(B)(1) and Prieur.
La.Code Evid. art. 404(B)(1) states:
B. Other crimes, wrongs, or acts. (1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral *205 part of the act or transaction that is the subject of the present proceeding.
La.Code Evid. art. 609.1(B) states:
B. Convictions. Generally, only offenses for which the witness has been convicted are admissible upon the issue of his credibility, and no inquiry is permitted into matters for which there has only been an arrest, the issuance of an arrest warrant, an indictment, a prosecution, or an acquittal.
We note La.Code Evid. art. 609.1 provides the guidelines for impeachment of a witness by proof of prior convictions. In this instance, the State was not seeking to attack the defendant's credibility. Furthermore, the article applies to prior convictions of witnesses who testify. The defendant chose not to take the stand in this case. Thus, he was not a witness. In any event, we find defendant's allegation that La.Code Evid. 404(B)(1) clashes with La.Code Evid. art. 609.1(B) without merit.
La.Code Crim.P. art. 804(A)(1) states:
A. In all cases the court shall charge the jury that:
(1) A person accused of crime is presumed by law to be innocent until each element of the crime necessary to constitute his guilt, is proven beyond reasonable doubt.
This court noted in State v. Dixon, 628 So.2d 1295, 1298 (La.App. 3 Cir.1993):
The prohibition against evidence of other crimes is largely based upon the excessively prejudicial effect upon the accused's constitutional presumption of innocence of the crime for which (alone) the accused is on trial. State v. Morris, 362 So.2d 1379, 1380 (La.1978).
La.Code Crim.P. art. 804(A)(1) requires that, in all cases, the judge should instruct the jury that defendant is innocent until each element of the crime is proven beyond a reasonable doubt. The records demonstrates the trial judge did so in this case, and emphasized the limited purpose of the other crimes evidence. Additionally, defendant did not move for an instruction at the time the witnesses testified. This argument is likewise, without merit.
Defendant also claims that, by admitting evidence of defendant's prior crimes under La.Code Evid. 404(B)(1), the trial court placed him in double jeopardy. La. Code Crim.P. art. 596 states:
Double jeopardy exists in a second trial only when the charge in that trial is:
(1) Identical with or a different grade of the same offense for which the defendant was in jeopardy in the first trial, whether or not a responsive verdict could have been rendered in the first trial as to the charge in the second trial; or
(2) Based on a part of a continuous offense for which offense the defendant was in jeopardy in the first trial.
Under the plain language of this statute it is apparent that double jeopardy did not exist in this case. Defendant was tried on an offense completely separate from the prior bad acts admitted under La.Code Evid. 404(B)(1). He was not being tried twice for the same offense. He was charged and tried for an aggravated rape which occurred on a night distinct from any involved in the prior crimes. Furthermore, the prior crimes took place at entirely different locations and involved entirely different people, although most were rapes or attempted rapes. The fact that evidence of the prior crimes was used in the instant case for the purpose of showing system and plan does not make this present conviction and sentence amenable to the charge of double jeopardy. See State v. Boudoin, 257 La. 583, 243 So.2d 265 (1971). This argument is, as are those above, without merit.
Having upheld the constitutionality of La. Code Evid. 404(B)(1), we will now analyze whether it was correctly applied in this instance. In State v. Jackson, 625 So.2d 146 (La.1993), the court explained:
In summation, for the evidence to be admissible, the state must comply with the notice requirements and limiting instructions set out in Prieur, prove with clear and convincing evidence that the other acts or crimes occurred and were committed by defendant, demonstrate that the other acts satisfy one of the requirements listed in La.Code Evid. art. 404(B)(1), and, finally, *206 show that the probative value of the evidence outweighs its prejudicial effect.
Id. at 149.
These Prieur requirements are the defendant's constitutional safeguards and work hand-in-hand with La.Code Evid. art. 404(B)(1). The record establishes that the State complied with the first Prieur requirement, that it give notice. Defendant claims that the other three requirements were not met. He states that, at the Prieur hearing, the State did not establish that the other crimes evidence was being introduced for a purpose other than to show the bad character of defendant. Defendant argues the trial judge further failed to follow the Prieur standard because he did not require that the State show the crimes were committed by clear and convincing evidence, nor did he balance the probative value against its prejudicial effect.
Doris Clements, Tess Franks, Sandra Guidry and Dawn Daigle Norris all testified at trial as to separate prior bad acts the defendant had allegedly perpetrated upon them. Doris Clements testified the defendant attempted aggravated rape upon her in 1988. She said the defendant came up behind her while she was working at her store one morning, pressed her against the counter and started kissing and licking her neck. Clements said, at this point, she could feel his penis rubbing up and down her back. When she resisted, he started strangling her and poked her in the eye with his finger. He demanded she go to the back room of the store with him and he began dragging her. She continued to resist and told him to take the money from the register. He responded that he did not want it. At that point she told defendant she was old enough to be his mother. Defendant responded he was sorry and ran out. Clements said defendant had been drinking and smelled of alcohol. She said she filed charges but since she was unavailable at the time of trial, the prosecutor dropped the charges.
Tess Franks testified that the defendant attempted to rape her in December of 1991. Defendant is the brother-in-law of Franks' husband, Dale. The Franks lived in New Iberia in a trailer about fifty feet from that of the defendant and his wife, Linda Crawford. At four a.m. on Christmas morning, defendant knocked on the Franks' bedroom window and asked Tess to come see Linda who wanted to talk to her. Tess got up, fixed her husband coffee, dressed and went to the Crawford's trailer. Once in the trailer, defendant pulled a knife on Tess. She grabbed the knife, cutting her hand, and he pulled it away. Defendant then put the knife to her throat and made her lay on the floor face down. He pulled off her shirt and pulled her sweatpants down. He ran his hands up and down her back for a while, then got up and laid down on the bed. Tess said she believed he was impotent. She dressed and went back to her trailer. She said the defendant had been drinking the evening before because she had gone over to the Crawfords' trailer to give them Christmas gifts. Franks stated she called the police four or five days later but the defendant was neither charged nor the case brought to trial because there were no witnesses.
Sandra Guidry testified that the defendant committed an aggravated rape upon her in Franklin in 1985. Guidry said she met defendant through her husband, who had been bringing the defendant around the house for a week. Guidry and her husband had been in a fight earlier in the day while defendant was present. She decided to go for a walk and after a while she noticed defendant was following her. Defendant, whom she observed had been drinking, told Guidry her husband wanted to make up with her and was at the bayou, adjacent to a wooded, dead-end-like area. Guidry proceeded to the area, and when she realized her husband was not there, started to run. Crawford grabbed her and dragged her by her hair into the bushes. Guidry was eight and a half months pregnant at the time and was being pushed and thrown about. Defendant told her to undress, and fearing him, she did so. Defendant ripped off her bra. He was cursing her, calling her a "bitch" and pulling her by the hair. He told her to get on the ground and she laid on her back. He then raped her. When he finished he started choking her, but eventually let go of her neck. Guidry went home and called the police. Defendant was *207 charged as a result of Ms. Guidry's complaint. However, his trial resulted in a hung jury. He was never retried.
Dawn Daigle Norris was a desk clerk at the Scottish Inn in New Iberia in October 1993. She observed defendant standing outside of the lobby peering at her through the window for about thirty minutes before he came in, proceeded to the desk and asked about the price of a room. Norris said her phone rang and she turned her back to answer it. At that point, defendant walked behind the desk and Norris told him he was not allowed behind the desk. He then began walking toward her. Whereupon, she noticed he had a knife. She ran behind a wall to where her boss lived, locked the door and called 911. Norris said no money was taken from the register and she made a police report but was never called to testify in court regarding the incident. She said she had never seen the defendant before that time.
Defendant claims the State did not show that defendant committed the other crimes by clear and convincing evidence as required and that any probative value was clearly outweighed by the unfair prejudice to the defendant. Prieur, 277 So.2d 126. However, we note that Huddleston v. U.S., 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988) states that the clear and convincing standard is no longer required as the standard of proof. The Huddleston court stated evidence of prior convictions need only be proved by a preponderance of the evidence. La.Code Evid. art. 1104 requires the burden of proof for a Prieur hearing in Louisiana be identical to that required by the Federal Rules of Evidence Art. IV, Rule 404. Huddleston is the leading case interpreting that federal rule.
La.Code Evid. arts. 1103 and 1104 are procedural as opposed to substantive. Thus, the controlling law is that in effect at the time of the hearing, not when the crime was committed. The Prieur hearings were held in November of 1994, and March of 1995. La.Code Evid. art. 1104 became effective August 27, 1994. At the time of the hearings, La.Code Evid. art. 1103, providing a clear and convincing burden of proof, remained in the Code of Evidence. Any possible confusion regarding the proper standard was dissolved when the Legislature repealed La.Code Evid. art. 1103, effective August 15, 1995. Thus defendant's Prieur hearings were held when both articles were part of the Code of Evidence. La.Civ.Code art. 8 states in part:
Laws are repealed, either entirely or partially, by other laws.
A repeal may be express or implied. It is express when it is literally declared by a subsequent law. It is implied when the new law contains provisions that are contrary to, or irreconcilable with, those of the former law.
This rule has been applied to criminal cases. In State v. Randall, 219 La. 578, 53 So.2d 689 (La.1951), the court explained:
Admittedly the statute does not expressly repeal the mentioned codal provisions; hence, the question is whether or not it repeals them by implication. In determining this question we must keep in mind those well established principles of law, reiterated in State v. Standard Oil Company of Louisiana, 188 La. 978, 178 So. 601, 626, `* * * that `repeals by implication are not favored and will not be indulged if there is any other reasonable construction; * * *'* * * that prior laws are repealed by subsequent laws only in case of positive enactment or clear repugnancy * * *; that nothing short of irreconcilable conflict between two statutes works a repeal by implication * * *; that where a statute is ambiguous and susceptible of two constructions, the courts will give that construction which best comports with the principles of reason, justice, and convenience, for it is to be presumed that the Legislature intended such exceptions to its language as would avoid its leading to injustice, oppression, or absurd consequences. * * *' See also Mouledoux v. Maestri, 197 La. 526, 2 So.2d 11.
Id. at 690-691.
Randall makes La.Civ.Code art. 8 applicable in criminal law. See also State v. Craig, 93-2515 (La.5/23/94); 637 So.2d 437. In State v. Piazza, 596 So.2d 817 (La.1992), the court explained:

*208 Legislative intent is the fundamental question in all cases of statutory interpretation, and rules of statutory construction are designed to ascertain and enforce the intent of the statute. The rules of statutory construction applicable in this case are those pertinent to conflicting legislative acts and to repeal by implication.
The legislative branch is presumed to intend to achieve a consistent body of law. 1A. N. Singer, Sutherland Statutory Construction Sec. 23.09 (Sands 4th ed.1986). When a legislature enacts a statute without mention of existing statutes on the same subject matter, the later act may, by necessary implication, effect the repeal of the preexisting law. However, there is a presumption against implied repeal, based on the theory that the legislature envisions the whole body of law when it enacts new legislation. Id. at Sec. 23.10. Thus, a court should give harmonious effect to all acts on a subject when reasonably possible. However, when two acts are clearly irreconcilable, are clearly repugnant as to essential matters relating to the acts, and are so inconsistent that the two cannot have concurrent operation, then the presumption against implied repeal falls, and the later statute governs. Id.
Accordingly, when inconsistent amendments to the same statute have been adopted at the same legislative session, the court should attempt to construe the statute so as to give effect to both amendments consistent with legislative intent. Only when it is impossible to give effect to both amendments should the court allow the time of passage of the acts to be the controlling factor. Allowing the later act to control effectively recognizes a repeal by implication of the earlier act, and such recognition of a repeal by implication should occur only when the acts passed in the same session are so repugnant that they cannot stand together.
Id. at 819.
This court discussed implied repeals in City of Zwolle v. Polk, 93-1102 (La.App. 3 Cir. 9/14/94); 643 So.2d 201, writ denied, 94-2553 (La.1/13/95); 648 So.2d 1339.
The Supreme Court has recently stated that it does not favor legislative repeals by implication. The court stated that repeals by implication are not favored and will not be indulged if there is any other reasonable construction. Thomas v. Highlands Ins. Co., 617 So.2d 877 (La.1993).
Id. at 203.
Applying La.Civ.Code art. 8 and the case law to the statutes in the instant case, we find the enactment of La.Code Evid. art. 1104 impliedly repealed La.Code Evid. art. 1103. The two laws are irreconcilable and the primacy of La.Code Evid. art. 1104 is the only reasonable understanding of the Legislature's intent in passing the law, especially in light of the subsequent repealing of La.Code Evid. art. 1103. Thus, the Huddleston standard is applicable, and the State's burden of as to the proof of defendant's "other crimes" was by a preponderance of the evidence.
The trial judge who heard the evidence at the hearing was convinced of the veracity of the witnesses' accounts. The witnesses' testimonies were neither vague nor indefinite. Defense counsel was able to cross-examine each witness concerning the incidents. Our review of the testimonies convinces us that it was reasonable for the trial judge to have found the women testified in sufficient detail to convince him that the other crimes were proved by a preponderance of the evidence. Furthermore, the length of time between the prior bad acts and the present crime should affect the weight of the evidence but not its admissibility. State v. Cupit, 189 La. 509, 179 So. 837 (1938); State v. Howard, 520 So.2d 1150 (La.App. 3 Cir. 1987), writ denied, 526 So.2d 790 (La.1988). In State v. Jackson, 625 So.2d 146 (La.1993), the court explained:
We find that the time between the other crimes evidence and the offense charged is but one factor to be considered when balancing probative value, prejudicial effect and relevancy. Length of time between the offenses should not exclude otherwise admissible evidence unless the lapse strips the testimony of probative value. While there must be some connexity between the crime charged and the other acts or *209 crimes, the mere passage of time will not necessarily defeat admissibility. However, such a determination must be made on a case by case basis taking into account the peculiar facts of every individual case with much discretion given to the trial judge. State v. Cupit, supra; State v. Driggers, supra [554 So.2d 720 (La.App. 2 Cir. 1989)].
Id. at 151.
Thus, the prior crimes were proved by a preponderance of the evidence and the trial judge properly found the probative value of the evidence outweighed the possibility of prejudice.
At the hearing, the trial judge agreed with the State that the witnesses' testimonies showed a system or pattern. "Generally, evidence of other sex crimes committed by the accused against the same victim or a similarly situated victim falls into one of the LSA-C.E. Art. 404(B) exceptions. Tolliver, [621 So.2d 17 (La.App. 2 Cir. 1993)]." State v. Allen, 26,547 (La.App. 2 Cir. 12/7/94); 647 So.2d 428, 434, writ denied, 95-0048 (La. 5/19/95); 654 So.2d 1352. In State v. Showers, 359 So.2d 104 (La.1978), the court noted:
It is true that this court has held to be admissible, for limited purposes, proof of other crimes exhibiting almost the identical modus operandi or system, committed in close proximity in time and place. State v. Jones, 332 So.2d 466 (La.1976) (a pre-Prieur trial); State v. Price, 325 So.2d 780 (La.1976); State v. Vince, 305 So.2d 916 (La.1974); State v. Lawrence, 294 So.2d 476 (La.1974).
However, as the jurisprudence has clarified, the other crime must be distinctively similar in system, State v. Slayton, 338 So.2d 694 (La.1976); State v. Waddles, 336 So.2d 810 (La.1976); State v. Hicks, 301 So.2d 357 (La.1974) I.e., `so peculiarly distinctive that one must logically say that they (the two crimes) are the work of the same person,' State v. Lee, 340 So.2d 1339, 1345 (concurring opinion of Mr. Justice Dennis) (La.1976). Furthermore, the proof of the other crime as part of the system must be relevant to prove a fact of consequence to the accused's present innocence or guilt (not including the inadmissible purpose to infer that the accused committed the present crime because he had committed the other one). State v. Ledet, 345 So.2d 474 (La.1977); State v. Frederick, 340 So.2d 1353 (La.1976); State v. Gaines, 340 So.2d 1294 (La.1977); State v. Hicks, 301 So.2d 357 (La.1974); State v. Harrison, 291 So.2d 782 (La.1974).
Id. at 106.
The trial judge stated that in all but one of the instances, defendant had committed crimes upon people with whom he had some previous contact, i.e. Clements, Franks and Guidry had each known the defendant prior to the incidents. Whereas, Norris had not. In the instant case, Keal had met the defendant once but did not know him personally. He was her neighbor in the trailer park where they both resided.
Three of the four witnesses testified the defendant had been drinking when he committed the crime and Keal's testimony indicated the same. Norris did not mention this issue. Additionally, with the exception of Franks' and Guidry's incidences, defendant loitered around the victims for several minutes before acting. Both of these facts were established in the instant case as well. The similarity in the timing of defendant's attacks and the fact that they were apparently precipitated by his intoxication could establish system or plan. Howard, 520 So.2d 1150.
In his reasons for finding a pattern in the crimes, the trial judge mentioned that the witnesses' experiences were similar, in part, because the defendant was impotent. However, we cannot say there was a pattern of impotence. While Franks clearly stated she felt defendant could not succeed in his attempted rape because of impotence, Guidry testified that defendant completed the rape. Thus he was not impotent in that instance. Clements stated she felt the hardness of his penis on her back yet, in that instance, defendant never went through with the rape. It was not established that he failed to finish with the rape because of impotence. Norris' testimony makes no reference to any attempts to sexually violate her. In the case sub judice, defendant was not impotent and was able to complete his violation of Keal.
*210 The defendant used force in all instances. He wielded a knife with Franks, Norris and Keal. He strangled and dragged Clements and Guidry. He also pulled Franks and Keal by their hair. The prior crimes took place during the years 1985, 1988, 1991, and 1993, and Keal was raped in 1993. Defendant acted at varying times of the day and night. The crimes were not committed in close proximity in time and space.
While the details of the various attacks were not so similar so as to produce a distinct modus operandi, we find the trial judge properly admitted the testimonies because they all, with the exception of Norris', show a pattern and intent or "lustful disposition" on defendant's part to force women, with either a knife or through strangulation and brute force, to engage in nonconsensual sex. See Allen, 647 So.2d 428.[3] See also State v. Tyler, 619 So.2d 807 (La.App. 1 Cir.1993), writ denied, 624 So.2d 1225 (La.1993), and Cupit, 179 So. 837. We note these cases deal with defendants whose "lustful disposition" was toward children and/or family members. However, we see no reason to deviate from those holdings simply because the victims in the incidents involving Crawford were neither minors nor relatives. See Howard, 520 So.2d 1150, for a complete review of cases dealing with the admissibility of evidence of other sex crimes committed against a person(s) other than the victim. The remoteness of the prior crimes is a factor to be considered in determining the question of relevancy. Additionally, the testimony was introduced to corroborate the assertions by the prosecutrix. Id.
Evidence of similar acts independent of the act charged as the crime in the indictment is admissible to show intent. State v. Bolden, 257 La. 60, 241 So.2d 490 (1970). Although specific intent is not an essential element of aggravated rape, evidence introduced to establish general intent or motive is admissible. State v. Hills, 259 La. 436, 250 So.2d 394 (1971). The Louisiana Supreme Court pointed out the difference between "intent" and "motive" in State v. Abercrombie, 375 So.2d 1170 (La.1979), wherein Justice Tate, as organ of the court, stated:
`While intent and motive are frequently regarded as one and the same thing, there is a clear distinction between them. Motive is the cause or reason that moves the will and induces action for a definite result, while intent is the purpose to use a particular means to effect such result.' Comment, Admissibility of Prior Criminal Acts as Substantive Evidence in Criminal Prosecutions, 36 Tenn.L.Rev. 515, 518 (1969).
In State v. Sutfield, 354 So.2d 1334, 1336-37 (La.1978), we recognized that evidence of other crimes may be admissible if the evidence is relevant to show motive, I.e., to show that the defendant had a reason to commit the crime he is charged with. Motive is generally recognized as an independent basis of relevancy. See McCormick, Evidence, Section 190 at 450-54 (2d ed. 1972); 2 Weinstein and Berger, Weinstein's Evidence, Section 404(09) at 404-53 (1979); Comment, Other Crimes Evidence in Louisiana, 33 La.L.Rev. 614, 617 (1973).
Nevertheless, `in order to have independent relevance, the motive established by the other crimes must be more than a general one, such as gaining wealth, which could be the underlying basis for almost any crime; it must be a motive factually peculiar to the victim and the charged crime.' State v. Sutfield, cited above, 354 So.2d at 1337.
In addition, as with all evidence of other crimes that is independently relevant, other crimes evidence admitted to show motive must satisfy two tests: 1) there must be clear and convincing evidence.[4] that the defendant did indeed commit the other crimes, and 2) the probative value of the evidence must outweigh the risk of prejudice *211 the risk that the evidence will be used to convict the defendant because he is a man with a criminal disposition. State v. Sutfield, cited above, 354 So.2d at 1337. See McCormick, Section 190 at 452-54; Weinstein and Berger, Section 404(10) at 404-66.
Id. at 1175.
Accordingly, we find the testimonies of the victims concerning prior sexual offenses by the defendant, perpetrated under similar circumstances, is admissible and has independent relevance to establish motive and intent. The trial judge weighed the probative value of the testimony against the potential prejudicial effect. The trial judge was correct in admitting the evidence.
Even if, in arguendo, the evidence should not have been admitted, we find its admission is not reversible error. The inadmissible introduction of other crimes evidence is subject to harmless error analysis. State v. Johnson, 94-1379 (La. 11/27/95); 664 So.2d 94. The record reveals that sufficient evidence existed to convict the defendant of the crime charged without the testimony of the prior crimes. The victim testified concerning the details of the crime. DNA testing revealed an extremely high probability that semen in the victim belonged to the defendant. Other State's witnesses provided supporting testimony that the defendant had raped Keal. This assignment of error is, likewise, without merit.

CONCLUSION:
The victim's crying prior to testifying did not merit a mistrial. Keal's statements to her mother, Romero and Ackal were excited utterances and therefore admissible. Testimonies of defendant's prior crimes were admissible because of their relevance in showing motive, system, plan and opportunity. Accordingly, we affirm defendant's conviction and sentence and remand this case to the district court to amend the commitment and minute entry of the sentence to reflect that the defendant is given credit for time served.
AFFIRMED AND REMANDED WITH INSTRUCTIONS.
NOTES
[1] See State v. Walters, 25,587 (La.App. 2 Cir. 1/19/94); 630 So.2d 1371, appeal after remand on other grounds, 26,647 (La.App. 2 Cir. 12/7/94); 648 So.2d 7, writ denied, 95-0422 (La. 6/16/95); 655 So.2d 340.
[2] On February 13, 1996, the Attorney General's Office was sent notice of defendant's constitutional challenge. In said notice the Attorney General was informed he had until February 28, 1996 to file a brief answering defendant's challenge.
[3] The Allen court found the evidence of defendant's prior molestations had independent relevancy and was admissible to show the defendant's "lustful disposition" toward young female relatives and his motivation by an unnatural interest in pre-pubescent girls.
[4] As we have discussed on pages 16 through 19 supra, the current burden of proof is by a preponderance of the evidence.